OCENUS VAN BUREN v. BILLIUS STOCKING.

*Specific performance—Laches.*

1. Where a party to a land contract has delayed performance on his part until there has been such a change in the value of the property as to render the contract unequal if made when its performance is sought to be enforced, equity will refuse relief. *Smith v. Lawrence*, 15 Mich. 499.

2. The mere assertion of a claim, unaccompanied by any act to give it effect, cannot avail to keep alive a right which would otherwise be precluded. *Mackall v. Casilear*, 137 U. S. 556.

3. After waiting 35 years, a bill was filed for the specific performance of a contract by which the defendant had sold to complainant an undivided half interest in about 25 acres of land, which was to be platted, and the lots sold, and one-half of the proceeds credited upon the purchase until a specified amount was paid, when defendant was to deed to complainant an undivided one-half interest in all land remaining unsold. The complainant was to look after the property and make sales. The contract was destroyed, and parol evidence was given of its contents. The defendant testified that it was to be fully performed within six years from date, while the complainant testified that no time was fixed for such performance. At the time the bill was filed a large city had grown up, and the land was a part of its territory, and a portion of it had been sold, and buildings had been erected, and the property had become valuable. And in affirming a decree dismissing the bill, the Court find that the contract ended after the lapse of six years from its date, during which time complainant had not made sufficient sales to meet his payments due thereon, and that since that time the contract has been treated by the defendant as having no force.

Appeal from Kent. (Grove, J.) Argued May 7, 1891. Decided June 5, 1891.

Bill for specific performance of land contract. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*M. L. Dunham,* for complainant, contended:

1. The contract constituted the defendant a trustee for the lands; citing *House v. Dexter,* 9 Mich. 246; and an express trust was created; citing *Culbertson v. Witbeck Co.,* 127 U. S. 326; and no particular formality is required for such creation; it may be by an express declaration or by any formal memorandum; citing *Fisher v. Fields,* 10 Johns. 495; *Corse v. Leggett,* 25 Barb. 389; *Urann v. Coates,* 109 Mass. 581; or by letters; citing *Forster v. Hale,* 3 Ves. 696; *Montague v. Hayes,* 10 Gray, 609; or by a pamphlet; citing *Barrell v. Joy,* 16 Mass. 221; or by a receipt; citing *Faxon v. Folvey,* 110 Mass. 392; or by a deposition or affidavit; citing *Pinney v. Fellows,* 15 Vt. 525; or by a recital in a bond; citing *Wright v. Douglass,* 7 N. Y. 564; or, in short, by any writing in which the fiduciary relations between the parties and its terms can be clearly read; citing 1 Perry, Tr. § 82; Browne, Stat. Fr. §§ 98, 109.

2. An express trust having been clearly established in this case, the burden of showing a repudiation or abrogation is upon the defendant; citing *Seymour v. Freer,* 8 Wall. 202; *Prevost v. Gratz,* 6 Wheat. 481; and to abrogate a trust by denial there must be a definite act of denial of unmistakable import, and not a mere and uncertain declaration of intent; citing *Campau v. Campau,* 45 Mich. 367; 2 Perry, Tr. § 864; Ang. Lim. § 468.

3. Courts of equity have control over matters of trust; citing *Forrest v. O'Donnell,* 42 Mich. 556; and every trust in land ceases as soon as the purposes cease for which it was created; citing *Montgomery v. Merrill,* 18 Mich. 338.

4. An examination of the Michigan cases where this Court has treated of the doctrine of laches does not disclose a state of facts which would warrant the holding that in this case the complainant has been guilty of any delay in bringing this suit; citing *McLean v. Barton,* Har. Ch. 279; *Campau v. Chene,* 1 Mich. 400; *Newberry v. Manfg. Co.,* 17 Id. 141; *Russell v. Miller,* 26 Id. 1; *McVickar v. Filer,* 31 Id. 304; *Ritson v. Dodge,* 33 Id. 463; *Loomis v. Brush,* 36 Id. 40; *Webster v. Gray,* 37 Id. 37; *Harlow v. Iron Co.,* 41 Id. 583.

*John H. Rozema,* of counsel, for complainant.

*Butterfield & Keeney,* for defendant, contended:

1. It is no merely technical defense which defendant makes. Complainant took no steps to perform the contract, nor to enforce its terms, while it seemed to his disadvantage to do so, and it would be contrary to the dictates of conscience to allow him to reap the benefits of that contract now. The decisions

of this Court are conclusive against complainant upon this point; citing *McLean v. Barton*, Har. Ch. 279; *Sears v. Smith*, 2 Mich. 243; *Cook v. Finkler*, 9 Id. 131; *Campau v. VanDyke*, 15 Id. 371; *Smith v. Lawrence*, Id. 499; *McClintock v. Laing*, 22 Id. 212; *Russell v. Miller*, 26 Id. 1; *McVickar v. Filer*, 31 Id. 304; *Ritson v. Dodge*, 33 Id. 463, 465; *Loomis v. Brush*, 36 Id. 40; *Dickinson v. Seaver*, 44 Id. 624; *Allen v. Allen*, 47 Id. 74; *Campau v. Lafferty*, 50 Id. 114; *Dragoo v. Dragoo*, Id. 573; *Reed v. Reed*, 52 Id. 117; *Haff v. Haff*, 54 Id. 511; *Haldane v. Sweet*, 55 Id. 196; *Frost v. Society*, 56 Id. 62; *Morgan v. Morgan*, 58 Id. 612; *Bumpus v. Bumpus*, 59 Id. 95; *Wright v. Fisher*, 65 Id. 275.

LONG, J. This bill is filed for the specific performance of a land contract and for an accounting.

The defendant is now 82 years old. The contract set up in the bill is alleged to have been made in the year 1855. Defendant was at that time the owner and in possession of about 80 acres of land, lying now within the corporate limits of the city of Grand Rapids. The contract was in writing, and is claimed to have embraced 25 acres of this land. It has now been divided into city lots, the most of which have been sold and built upon. It is claimed that the land embraced in the contract is now known as blocks 1, 2, 3, 4, 9, 10, and 11 of Stocking & Smith's subdivision of Stocking & Allen's addition to the city of Grand Rapids.

The claim of the complainant is that about July 1, 1855, defendant sold to him an undivided half interest in this property for $2,500, $500 being paid down at the time of the purchase, the balance, $2,000, to be paid from the sales of the property; that is, the property was to be platted into lots and sold, and one-half of the proceeds to be retained by defendant and credited upon complainant's purchase until $2,000 was paid, together with complainant's share of taxes and expenses thereon; and that, when one-half of such sales should cover such amount, defendant was to deed complainant an equal un-

divided one-half interest in all said lands remaining un-
sold. This contract, it is claimed, was in writing, and
was deposited with the register of deeds of Kent county
for safe-keeping. No copy was kept. The records of the
county of Kent were destroyed by fire in the year 1860,
and this contract burned. The complainant attempts to
prove its contents by parol evidence introduced on the
hearing in the court below. While the description of the
lands is set up in the bill as comprised within the blocks
above mentioned, the complainant's testimony is not very
satisfactory that this is the exact 25 acres of land
embraced within the contract, and the parties are not
agreed as to just what lands were embraced therein;
neither do they agree as to the exact terms and conditions
of the contract.

It is apparent that some sort of written agreement was
entered into between the parties in the year 1855,—the
complainant claiming that it was made in July of that
year, the defendant insisting that it was made in Octo-
ber. They also disagree as to its terms. The complain-
ant also claims that there was no time within which the
contract was to be fully completed and performed, and
no rate of interest fixed therein. The defendant is also
uncertain what interest the contract was to bear, but
insists that the contract, by its terms, was to be fully
performed within 6 years from its date. More than 35
years elapsed after the contract was made before the com-
plainant took any steps to enforce it, and 30 years have
elapsed since the contract was destroyed, and the first
attempt at its enforcement was by the filing of this bill
in 1890. In the mean time defendant has sold a large
amount of the property without consultation with the
complainant. He has been in possession of the whole
property, and there is nothing in the record showing
that he did not deal with it as his own. He gave a large

block of it to his daughter years ago, has built upon certain of the lots, and by the growth of the city it has become valuable.

Defendant claims that, after the contract was made, the complainant became indebted to him in large sums of money; and that, though the contract was to expire within the six years, he offered to compromise with him, and deed him a small amount of the land, which was refused; that in 1867 or 1868 the complainant put the matter into the hands of Mr. Holmes, a lawyer of Grand Rapids, for settlement, and at which time the defendant denied that complainant had any rights in the land. It is not claimed by complainant that he attempted to assert any rights in the land from that time till about the time the bill was filed, except that he attempted to talk with the defendant about it some two or three years before that time.

Counsel for complainant attempts to excuse these laches. He says that from 1855 up to 1860 no sales of this property could be made for want of purchasers, and the property did not rise in value until after 1870, after which time defendant began to make sales, and sales have been made by defendant from time to time since that date; that the only right complainant could assert was the simple one of having the defendant deed him an equal undivided one-half interest in all of the property remaining unsold, after the payment of this contract; that sales of the property, and consequent payment, were postponed beyond the anticipation of the parties, which was the fault of neither party, and a right of action would not accrue to the complainant until the defendant should repudiate the contract, and when he so explicitly informed complainant; that complainant had no means of knowing the amount of sales made by defendant, or when the moneys due on the contract would be fully paid from

such sales, but that he inquired of the defendant from time to time how they stood, and the question was nearly always evaded by defendant, and when not evaded he universally replied that he was not yet paid; that three years ago was the last time complainant personally made such inquiry, and received no satisfaction; and that in the spring of 1890 he sent his attorney to see defendant, at which time defendant denied all obligation on his part to account to complainant, and denied that complainant had any interest in the property whatever.

There is another matter of controversy between the parties as to what the contract provided; and that is, by the terms of the contract, who was to look after and make sales of the properties? We are satisfied that it was understood that complainant should look after the properties and make sales. He was engaged to some extent in the real-estate business, and the defendant was more or less away from home, looking after lands in other parts of the State for other parties.

We are satisfied, however, from an examination of the record, that it would be most unjust and inequitable to permit the complainant at this late date, after having slept for nearly 30 years upon his rights, now to set up a claim to an interest in these premises. The contract was destroyed by fire in the year 1860. No copy was kept of it, which complainant well knew; and yet, from that date to the time of filing this bill, he has made no effort to enforce it, and during all that time he has known that it rested wholly within the recollection of himself and the defendant as to its terms and conditions. His statement of its contents, as to the particular description of land embraced within it, the time of its performance, and the question of interest, is altogether too meager for this Court to say that he has shown by a preponderance of

evidence that the contract was such as his counsel now claim. Some of the essentials of the contract, as claimed by complainant, are denied by the defendant, and we think that some weight should be given to the defendant's testimony in relation to the time in which the contract was to be performed. If it is true, as claimed by the defendant, that the limit of time fixed by the contract was six years, which the complainant should have to make sales of this property, the complainant certainly has no standing for its enforcement in this Court; and this claim of the defendant that there was a limitation of time for its performance seems most reasonable. The complainant has waited until a city has been built upon these lands, and now for the first time comes into a court of equity, and asks its aid to establish a claim which had slept for 30 years; and this, after the lands have become valuable by the growth of the city, and the moneys expended by the defendant upon the lands.

Where the party has lain by, without performance on his part, until there has been such a change in the value of the property as to render the contract unequal if made now, the court of equity will refuse relief. *Smith v. Lawrence*, 15 Mich. 499.

We do not think that a mere assertion of a claim made by the complainant from time to time has any effect to keep alive a right which would otherwise be pre_ cluded, as such claim has never been accompanied by any act to give effect to it. *Mackall v. Casilear*, 137 U. S. 556 (11 Sup. Ct. Rep. 178).

It is claimed by the complainant, however, that the contract created an express trust, by which the defendant was to hold these lands, and to dispose of them for the benefit of himself and the complainant, to account for the proceeds, and to deed over to the complainant

any lands remaining unsold after the contract had been fully performed; and that, therefore, a lapse of time could not affect his rights, as they could not be barred by the statute of limitations. We do not regard the contract, in view of the defendant's testimony, as creating such a trust upon which there was no fixed limit, and the conduct of the complainant himself shows that since 1860 he has not attempted to assert any rights thereunder, and the defendant, as early as 1867 or 1868, expressly denied the complainant's rights in the premises; and, if any express trust was created by the contract, the statute of limitations would begin to run from the time when such repudiation and claim came to the knowledge of the beneficiary.

The case, in our opinion, however, does not rest upon this question. We think by its terms it was to be ended after the lapse of six years from its date, unless in the mean time complainant had made sufficient sales of the lands to meet his payments thereon, and that since that time it has been treated by the defendant as having no force.

Upon the hearing in the court below the circuit judge dismissed complainant's bill, and we think very properly.

That decree must be affirmed, with costs.

CHAMPLIN, C. J., MORSE and McGRATH, JJ., concurred. GRANT, J., did not sit.