FISK v. FISK.

1. Appeal and Error—Partnership—Unsought Relief—Record.

Decree that parties were partners in a manufacturing business is vacated where it is relief which was not within the scope of the pleadings, not sought by either party, is inconsistent with relief sought by each and cannot be sustained by the record.

2. Contracts—Meeting of the Minds.

A meeting of the minds upon all essential points is necessary to constitute a valid contract.

3. Appeal and Error—Specific Performance—Chancery Case—De Novo Hearing.

A suit for specific performance, being an equity proceeding, is heard *de novo* by the Supreme Court.

4. Specific Performance—Burden of Proof.

Plaintiff, seeking specific performance of a contract, has the burden of proving all the elements to establish a contract.

---

References for Points in Headnotes

[2] 12 Am Jur, Contracts, § 19.
[3] 2 Am Jur, Appeal and Error, § 2; 3 Am Jur, Appeal and Error, § 815.
[4–7] 49 Am Jur, Specific Performance, § 167.
[5–8] 49 Am Jur, Specific Performance, § 169.
[6, 7] 49 Am Jur, Specific Performance, §§ 40, 41, 79.
[9, 13] 49 Am Jur, Specific Performance, § 58 *et seq.*
[10, 13] 49 Am Jur, Specific Performance, § 73.
[11, 12] 49 Am Jur, Specific Performance, §§ 8, 9.
[13] 49 Am Jur, Specific Performance, §§ 61, 63.
[15] 14 Am Jur, Costs, § 93.

5. S<small>AME</small>—O<small>RAL</small> A<small>GREEMENT</small> <small>TO</small> C<small>ONVEY</small> P<small>ROPERTY</small>—E<small>VIDENCE</small>.

Plaintiff, seeking specific performance of an oral agreement to convey property, must establish such agreement by clear, satisfactory and convincing proof.

6. S<small>AME</small>—C<small>ONTRACT</small> <small>TO</small> C<small>ONVEY</small> B<small>USINESS</small>—B<small>URDEN</small> <small>OF</small> P<small>ROOF</small>—C<small>ON</small>-<small>DITIONS</small>.

Plaintiff son, seeking specific performance of defendant father's written contract, dated April 28, 1930, to convey manufacturing business to son at expiration of year 1930 if a cost accountant could not show any loss or depreciation, had burden of proving compliance with condition in order to justify granting relief sought.

7. S<small>AME</small>—B<small>URDEN</small> <small>OF</small> P<small>ROOF</small>—E<small>VIDENCE</small>.

Plaintiff son failed to sustain his burden of.proof that he was entitled to conveyance from defendant father of casket hardware manufacturing business at expiration of year 1930, where no accounting was then had whereby plaintiff was shown to have complied with condition of contract, plaintiff continued as a regularly-paid salaried employee for upwards of 15 years thereafter, assumed-name certificate under which business was conducted remained unchanged, both parties signed checks on firm's bank account, plaintiff's requests to be taken in as a partner were definitely refused and a loan to the business was made on the basis of defendant's sole ownership thereof.

8. S<small>AME</small>—C<small>ONTRACT</small> <small>TO</small> C<small>ONVEY</small> B<small>USINESS</small>—E<small>MPLOYEE</small> R<small>ELATION</small>—E<small>VIDENCE</small>.

Course of conduct over period of more than 15 years from time plaintiff son claimed to be sole owner of casket hardware manufacturing business, which showed plaintiff's relation was that of an employee, precluded granting relief of specific performance of defendant father's alleged agreement to convey business to plaintiff.

9. S<small>AME</small>—C<small>ONTRACT</small> <small>TO</small> C<small>ONVEY</small> B<small>USINESS</small>—E<small>QUITY</small>.

Specific performance of father's contract to convey casket hardware manufacturing business to son because father refused to pay proceeds of $8,450 income tax refund check to firm where business had been conducted as though owned by father, loans to the business were obtained by pledge of other assets than those belonging to the firm and it would be inequitable to turn over business now profitable and grant such relief on contract made when business was in financial straits.

10. SAME—TIME TO SEEK RELIEF.

One who seeks specific performance must do so with such reasonable promptness as the circumstances of the case require.

11. SAME—NATURE OF REMEDY.

Specific performance is, in a large measure, a discretionary, equitable remedy—a matter of grace, not of absolute right.

12. SAME—EQUITY.

Specific performance will or will not be decreed by a court of equity depending on whether or not equity will be accomplished under the peculiar circumstances of the particular case.

13. SAME—EQUITY—BENEFITS TO PLAINTIFF.

Amount by which plaintiff has benefited as a result of his participation in manufacturing business is taken into account in determining whether or not he should be granted equitable relief of specific performance of father's contract to convey business to plaintiff nearly 16 years after plaintiff claims he was entitled to it.

14. ACCOUNTING—INTEREST.

Accounting by plaintiff, granted to defendant under his cross bill, other than such as will be incident to termination of receivership, is limited to sum plaintiff appropriated from business without right, with interest at 5 per cent. per annum from date of appropriation.

15. COSTS—EQUITY.

Defendant is granted taxable costs of both courts where, on appeal, he is granted a substantial measure of relief by way of accounting that was not granted by the trial court and plaintiff is not granted any relief by way of specific performance.

Appeal from Wayne; Culehan (Miles N.), J. Submitted June 6, 1950. (Docket No. 7, Calendar No. 44,761.) Decided October 2, 1950.

Bill by Charles Douglas Fisk against William T. Fisk, Sr., individually and doing business as the Casket Hardware Manufacturing Company, for specific performance of a written agreement and other relief. Decree determining that plaintiff and de-

fendant are partners. Defendant appeals. Plaintiff cross-appeals. Reversed and remanded.

*George A. Kelly,* for plaintiff.

*Douglas Leo Paterson,* for defendant.

NORTH, J. Primarily plaintiff's suit is for specific performance of an alleged conditional agreement of defendant to transfer to plaintiff a business conducted by defendant under the name of "The Casket Hardware Manufacturing Company," and for an accounting. Defendant's answer denies the material allegations of the bill of complaint, and by his cross bill defendant seeks an accounting by plaintiff and cross-defendant, and that he "may be ordered to give up, surrender and return to your cross-plaintiff the management of the Casket Hardware Manufacturing Company, and all moneys improperly withdrawn from the funds belonging to said company." In plaintiff's testimony he placed a value of $200,000 upon the company's property (including certain intangibles) at the time this suit was commenced; but defendant testified to a value of $100,000. The trial court did not grant the relief sought by either litigant, but instead the trial court decreed:

"That the plaintiff and defendant herein, are, and have been since the year 1930, partners in the business of The Casket Hardware Manufacturing Company, and that each partner owns and has owned an undivided 1/2 interest in the said business of The Casket Hardware Manufacturing Company since said date."

Defendant appealed and plaintiff perfected a cross appeal. It is our understanding that neither of these parties litigant contend that the trial court was justified in decreeing a partnership between

them. Relief of that character was not within the scope of the pleadings, was not sought by either party, is inconsistent with the relief sought by each, and cannot be sustained on the record before us. The testimony did not sustain a conclusion that these parties ever entered into a completed agreement which provided for a partnership between them; and it could not be successfully claimed that there ever was a meeting of minds between these litigants to that end. Hence, the decree entered in the trial court must be vacated. "A meeting of the minds upon all essential points is necessary to constitute a valid contract." *Dodge* v. *Blood* (syllabus), 307 Mich 169.

This being an equity proceeding we hear the case *de novo;* and insofar as relief is sought by plaintiff the burden of proof is upon him.

"Plaintiff seeking specific performance of the contract has the burden of proving all the elements to establish a contract." *Dodge* v. *Blood, supra.*

"In order that courts may specifically enforce an oral agreement to convey property, plaintiff must establish by clear, satisfactory and convincing proof the terms of such agreement." *Steketee* v. *Steketee,* 317 Mich 100, 105.

The facts involved are rather intricate, quite numerous, and somewhat obscure because they cover a period from 1920 to the filing of the bill of complaint herein, December 9, 1946. And further, there is conflict of testimony as to essential facts in the case. However the material background of the litigation may be sufficiently summarized as follows.

In 1920, plaintiff, then a high-school graduate at the age of 17 or 18 years, entered the employment of his father, the defendant, who was engaged in manufacturing and selling metal trimmings for caskets, under the firm name of "The Casket Hardware

Manufacturing Company," in Detroit. For about 2 years plaintiff continued at a rather modest salary in such employment, partly as a production man learning the business and partly as a travelling salesman. Trouble arose between plaintiff and his father, the latter testifying that plaintiff was unduly irregular in attending his employment and more particularly that plaintiff refused to render an itemized account of his expenses while travelling as a salesman. Because of their differences plaintiff obtained employment elsewhere in 1922; but their differences apparently having been somewhat reconciled, plaintiff returned to the employment of The Casket Hardware . Manufacturing Company in December, 1923. He continued such employment until 1929 when plaintiff obtained employment elsewhere at increased pay, which defendant had refused to give him as an employee of The Casket Hardware Manufacturing Company. But again in April, 1930, plaintiff returned to employment in his father's business at increased pay of $60 per week. He claims that in part his return was induced by previous statements of defendant that eventually the business would be turned over to plaintiff. The testimony is undisputed that shortly after plaintiff returned to his employment in the father's business, the father took plaintiff, on or about April 17, 1930, to the office of defendant's then attorney. While there the father directed the attorney to draft several papers evidently designed to accomplish a transfer of the father's business to the son. One of such papers was a bill of sale from defendant to plaintiff for the nominal consideration of $1. Another of the papers was intended to be used incident to a change in the certificate of assumed name. And still another was in the form of a lease of property owned by defendant and occupied by the business. The attorney prepared the papers, but it is agreed that none of

them were executed by defendant. However, plaintiff claims that shortly after this visit to the office of defendant's attorney, and on or about April 28, 1930, after something of an interview with his father, plaintiff prepared in duplicate, at least one of which was signed by both parties, exhibit 6. Admittedly at this particular time the business was in a decidedly bad financial condition, bordering on bankruptcy. Exhibit 6 reads as follows:

"It is hereby agreed between W. T. Fisk and his son D. C. Fisk that the son D. C. Fisk, is to have unhampered management of The Casket Hardware Manufacturing Company during the period of May 1 to December 31, 1930.

"It is agreed that at the end of this period, if a cost accountant can show any indication of the son, D. C. Fisk, having run The Casket Hardware business at a loss, the said D. C. Fisk agrees to step down and out and turn the business back to W. T. Fisk.

"W. T. Fisk agrees that if at the end of this period a cost accountant can not show any loss or depreciation of business, he will sign the bill of sale that was agreed upon and written up by our attorney, Leslie Young.

"W. T. Fisk agrees to leave the entire management of the aforesaid Casket Hardware business completely and entirely in the hands of the son, D. C. Fisk.

> "(Sgd.)   W. T. Fisk
> "(Sgd.)   D. C. Fisk"

The outcome of this suit turns upon whether plaintiff is entitled to specific performance of exhibit 6. While defendant admits that his signature appears on exhibit 6, he testified in effect that he did not knowingly place his signature thereon and that he never saw exhibit 6 prior to the time this case was in court, although shortly prior thereto its contents were read to him, evidently with plaintiff's approval, over the telephone by a Mr. William F. Schuett, who

since 1927 had been continuously in the employ of The Casket Hardware Manufacturing Company. Without indicating when or how it was accomplished, at least by inference, defendant's testimony was to the effect that his signature to exhibit 6 was surreptitiously obtained. While plaintiff's testimony, because of lack of memory, was quite indefinite as to the exact date or the circumstances attending the execution of exhibit 6 in the presence of only the parties thereto, his testimony in this particular is in direct conflict with that of defendant.

Our review of the record brings the conclusion that, without so deciding, we may for the purpose of decision herein assume that defendant did knowingly execute exhibit 6. But there remains a controlling question—*i.e.*: Was there compliance with the condition embodied in exhibit 6 that during the specified period the business would be operated by plaintiff without a loss, otherwise he agreed "to step down and out and turn the business back to W. T. Fisk?"

Notwithstanding plaintiff's contention to the contrary, the burden of proof to justify granting specific performance to plaintiff is on him to prove compliance with the noted condition. Plaintiff did attempt to establish from the company's records such compliance by his own testimony and that of 2 accountants. They testified that for the last 8 months of the year 1930 the books of The Casket Hardware Manufacturing Company disclosed a profit. The accountants testified there was a profit of $1,149.15. But to the contrary defendant also produced 2 accountants who pointed out a claimed error in the accounting in behalf of plaintiff, and testified that for the year 1930 the business suffered a loss of $1,849.46. As a result of our review of this record we are in accord with the conclusion of the trial judge, who, in his opinion, said:

"The court in the instant case is unable to determine from the testimony of the auditors  *  *  * whether the plaintiff completely performed his part of the bargain in the year 1930, and therefore is entitled to specific performance."

In addition to the foregoing, it must be noted, and is quite persuasive, that at the close of business for the year 1930, according to defendant's testimony, plaintiff made no claim that he had complied with the condition of exhibit 6 and therefore was entitled to a transfer of the business to him. At that time no accounting of the company's business for the designated period was made in behalf of either of these parties. To all intents and purposes plaintiff continued as before in the capacity of a salaried employee. He was regularly paid weekly wages. It was not until shortly before this suit was commenced in December, 1946, and under circumstances hereinafter noted, that plaintiff made known to defendant that the former claimed to be the sole owner of the business. During the intervening years, at least until 1942, when because of ill health defendant became inactive, the business was managed jointly by the father and son. In that particular they were ably assisted by William F. Schuett, who since 1927 had been in charge of the production phase of the business. We note some of the incidents which occurred between plaintiff and defendant subsequent to 1930 which are quite inconsistent with plaintiff's claim of sole ownership or the right thereto.

The business during the subsequent 15 or 16 years continued under the same name as prior to 1930. Defendant as well as plaintiff signed checks on the bank account carried by the company. Plaintiff testified: "My father always received the original bank statements and the cancelled checks until the lawsuit started." On various occasions after 1930, plaintiff sought defendant's approval for a raise in plaintiff's

weekly salary. One such occasion was in 1942. In 1943, plaintiff besought his father to take plaintiff, then being paid $70 per week, into the business as a partner. The father promptly and definitely refused to do so. At that time plaintiff's status was evidently considered by both plaintiff and defendant as that of an employee; and under the rulings of the National Labor Relations Board his rate of pay as an employee was "frozen." Plaintiff testified:

"In 1943, when we had $39,000 in the bank, I felt it was time my father and I talked about what the business was going to do for us and I asked him at that time to unfreeze my salary, literally speaking, by making me a partner in the business, which would make me an employer instead of an employee."

As just above noted, defendant promptly refused plaintiff's 1943 request to be made a partner. After defendant, in 1942, became too ill to go to the office as formerly, according to plaintiff's undisputed testimony: "The mail did not come to the factory; it went to my father's home, and then had to be picked up the following day by the foreman, so that as far as managing the business was concerned, I was not doing so." In 1939, when the father and son were co-operating in securing a RFC loan, the application therefor made no disclosure of a claimed interest in the business on the part of plaintiff. Instead, the loan was consummated on the representation and assumption that defendant was the sole owner of the business. In 1943, shortly after defendant's refusal to take plaintiff into partnership, plaintiff wrote his father a letter in which he said: "According to your proposition you evidently are not satisfied and wish to run the business yourself. That is all right with me." In explanation of the above, plaintiff testified: "I meant that if he was not satisfied with the way I was operating the business that

he should tell me so and come up there and run it himself."

While there are other phases of the record of the same purport, we think the conclusion is quite irresistible that for years after April, 1930, at which time plaintiff claims his father signed exhibit 6 of which specific performance is sought, the parties themselves understood and, at least by the course of conduct pursued by each, considered that plaintiff's only status in relation to the business of The Casket Hardware Manufacturing Company was that of an employee. This was entirely inconsistent with any thought or assumption that plaintiff was the sole owner of the business or was entitled to have it transferred to him.

In reaching the above conclusion we are mindful of plaintiff's claim that he allowed matters between him and his father to drift along without any attempt on the part of plaintiff to enforce his alleged right because, from time to time through the years subsequent to 1930, defendant had assured plaintiff that the business was his or would ultimately be his. This claim of such assurances on the part of the father was specifically denied in his testimony. Throughout all the years subsequent to 1930 plaintiff received for his services regular weekly pay, varying in amounts from $60 per week in 1930 to $150 per week in 1946, and $250 per week beginning shortly before this suit was instituted and the business placed in charge of receivers.

The final break between plaintiff and defendant, which resulted in this lawsuit, came about from the following circumstances. In September, 1946, defendant received a check in the amount of $8,450 for a refund of payment incident to his 1945 income tax. The check was payable to defendant and his wife. Plaintiff demanded that the check should be indorsed by the payees so that the proceeds, as plaintiff

claims, could be placed with the funds of The Casket Hardware Manufacturing Company, which then had approximately $19,000 in its bank account. The reason asserted by plaintiff for so claiming was that the income tax had been paid out of funds of the company. Defendant refused to indorse and turn the check over to plaintiff. Thereupon plaintiff became incensed and asserted that if defendant was going to retain the proceeds of the check, plaintiff would draw a check on the company's bank account payable to himself in a like amount. Over the vigorous protest of defendant, plaintiff did withdraw and appropriate to himself a like amount from the company's bank account. Thereupon defendant gave plaintiff notice in writing that plaintiff should not sign any more checks against the company's bank funds, but that Mr. Schuett should bring all checks to defendant to be signed; and further that thereafter plaintiff's pay should not be more than $125 per week. Shortly thereafter plaintiff learned that defendant either had changed his will, or proposed to change his will, in such a manner as to disinherit plaintiff. Plaintiff testified in effect that under the circumstances he concluded he must assert his alleged rights in the business and thereupon instituted this suit.

Under the conflicting testimony in this case we are unable, as was the trial judge, to find that plaintiff fulfilled or complied with the terms of exhibit 6, and therefore the relief sought in his bill of complaint must be denied.

Another sound reason for reaching the result just above indicated may be noted as follows: In 1938, The Casket Hardware Manufacturing Company had pressing need of funds to satisfy unpaid taxes, creditors, and to finance a prospective change in the company's future business. A loan was solicited from the company's bank, but was refused. Thereupon

the parties to this suit were successful in negotiating a $12,000 Reconstruction Finance Corporation loan to defendant and his wife. But to obtain this loan defendant and his wife pledged a very large amount (possibly all) of the property they individually owned. The following quotation from defendant's brief is in substantial accord with the facts disclosed by the record:

"The business experienced the general difficulties of the depression, was heavily in debt, and in 1938 the business commenced to manufacture and sell bathroom fixtures, but before doing so William T. Fisk and his wife, Grace L. Fisk, sought and obtained a $12,000 loan from the Reconstruction Finance Corporation upon collateral owned by William T. and Grace L. Fisk, including real estate valued at $45,-000, assignment of rentals of a five-year lease of buildings owned by William T. and Grace L. Fisk of $150 per month, business and machinery valued at $25,000, home of William T. and Grace L. Fisk valued at $6,000. * * * The Reconstruction Finance Corporation loan was repaid by the business."

The above hazard taken by defendant tided the company over its then financial straits and doubtless saved from complete failure the business of the company which was then, as theretofore and thereafter, being carried on as belonging to defendant. In our judgment it would be highly inequitable after such a change in the circumstances resulting from the above course of conduct of defendant, and after the company became prosperous in the subsequent 7 or 8 years, instead of one bordering on insolvency, to grant specific performance to plaintiff and thus permit him to reap the benefit of defendant's successful efforts above noted. Especially is this so since, if plaintiff was ever entitled to specific performance, it accrued to him as early as 1931, at a time when the

business of the company seemed headed for bankruptcy.

One who seeks specific performance must do so with such reasonable promptness as the circumstances of the case require. *Van Buren* v. *Stocking,* 86 Mich 246. Specific performance is, in a large measure, a discretionary, equitable remedy—a matter of grace, not of absolute right. *Colonial Theatrical Enterprises* v. *Sage,* 255 Mich 160, 172; *Walters* v. *Durbin,* 276 Mich 580; *Higbie* v. *Chase,* 306 Mich 577. Specific performance will or will not be decreed by a court of equity depending on whether or not equity will be accomplished under the peculiar circumstances of the particular case. *Snider* v. *Schaffer,* 276 Mich 92.

As also bearing somewhat upon the equities of this controversy, it may be noted that in his relations with his father and the business of The Casket Hardware Manufacturing Company plaintiff has benefited. From 1930 to the time this suit was instituted (December 9, 1946) his payments for services to the company and gifts to him by his father totaled approximately $69,536.

Plaintiff's bill of complaint is dismissed and the relief therein prayed denied. Defendant may have relief as a cross-plaintiff. He is entitled to have the business of The Casket Hardware Manufacturing Company, its management and control, restored to him. As to an accounting by plaintiff to defendant, except such as will be had incident to terminating the recceivership, we conclude that substantial equity will be done by decreeing that plaintiff shall account to defendant only as to the $8,450 of the company's funds which plaintiff appropriated in 1946, and interest at 5 per cent. per annum thereon from the date of the appropriation.

A decree may be taken accordingly in this Court, but subject thereto the case will be remanded to the

trial court for further proceedings incident to terminating the receivership. Defendant may have taxable costs of both courts.

BOYLES, C. J., and REID, DETHMERS, BUTZEL, CARR, and SHARPE, JJ., concurred. BUSHNELL, J., did not sit.