*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CODY ROSS and MOLLY ROSS,

        Plaintiffs-Appellants,

v

ALEXANDRA J. DEEHAN,

        Defendant-Appellee.

UNPUBLISHED
January 22, 2025
1:23 PM

No. 367262
Sanilac Circuit Court
LC No. 22-039461-CZ

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

In this contractual property dispute, plaintiffs appeal as of right the trial court's judgment[1] entered after a bench trial. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In January 2022, plaintiffs and residents of Sanilac County, Cody and Molly Ross,[2] filed a complaint seeking equitable relief. Specifically, plaintiffs alleged that Robert Deehan (Deehan) purchased property in Argyle Township, located in Sanilac County, from Robert and Marjorie Wheeler, but a deed reflecting the conveyance was never recorded in the county's register of deeds. Deehan was adjudicated a legally incapacitated person in St. Clair County, where the probate court appointed the public guardian to serve as Deehan's guardian. Plaintiffs purportedly entered into a

---

[1] The trial court entered judgment in favor of defendant and against plaintiffs for the specific performance claim, but entered judgment of $2,139.11 in favor of plaintiffs and against defendant for the unjust enrichment claim.

[2] Cody and Molly Ross are collectively referenced as "plaintiffs." When necessary to reference a plaintiff individually, we will use the party's first name. Only Cody signed the purchase agreement as a buyer. Molly's signature was limited to the role of witness. Nonetheless, the complaint seeks specific performance on behalf of plaintiffs.

purchase agreement with the guardian for the sale of Deehan's Sanilac County property. The sale was not completed before Deehan's death on April 20, 2020.

Defendant, Alexandra J. Deehan, is Deehan's daughter. Plaintiffs contended that Deehan executed a Lady Bird deed[3] on January 31, 2013, that retained a life estate and the power to convey the property during his lifetime. According to this deed, if Deehan failed to exercise that power, the property would pass to defendant at Deehan's death. Defendant purportedly recorded the Lady Bird deed on May 18, 2020. Plaintiffs claimed to have an interest in the property through the purchase agreement and alleged defendant's interest was subject to plaintiffs' agreement. Additionally, plaintiffs claimed to be ready, willing, and able to purchase the property and sought to waive any title defect created by the absence of a deed vesting title to the property in Deehan. Plaintiffs alleged that defendant was in breach of their purchase agreement by refusing to close the sale and the refusal entitled plaintiffs to the equitable relief of specific performance.[4]

A bench trial was conducted in July 2023. Kelly Strozeski served as St. Clair County's Public Guardian since 2017. On June 11, 2018, Strozeski's office was appointed the guardian for Deehan after he was admitted to McLaren Hospital following a stroke. Strozeski learned Deehan owned property in Snover, Michigan, and part of her duties included administering real estate. Cody contacted Strozeski's assistant, Amanda Seals, to discuss Deehan's property. Strozeski was unaware of the person that initiated the possible sale. But, Strozeski filed the paperwork when a purchase agreement was negotiated. The purchase agreement was presented by Cody. Strozeski reviewed the purchase agreement then filed a petition with the probate court to approve the sale. When asked if the purchase was a "fair and appropriate" offer, Strozeski answered, "I mean, I present what we are given to the [c]ourt." Strozeski did not testify that she was happy or satisfied with the offer or address the offer price in comparison to the property's appraised value. The probate court then determined if the sale Strozeski proposed would be approved.

Despite the receipt and submission of the purchase agreement to the court, Strozeski did not sign the purchase agreement as the seller. She explained that she usually waited until obtaining court approval to sign the document. Instead, Strozeski filed a petition to approve the sale of Deehan's real estate, and the petition referenced the purchase agreement which was attached. The petition also contained a document from Cody's financial institution. A hearing was held on the petition that Strozeski did not attend but her assistant did. The probate court approved the sale and signed the petition. The court's order provided it would be recorded with the appropriate register of deeds. That action did not happen because the sale's closing needed to occur. Strozeski began

---

[3] Michigan is one of the states that recognizes a Lady Bird deed and its use as an estate-planning tool to avoid probate. See *In re Estate of Rasmer*, 501 Mich 18, 44 n 18; 903 NW2d 800 (2017). The "Lady Bird" deed is a deed "that allows a property owner to transfer ownership of the property to another while retaining the right to hold and occupy the property and use it as if the transferor were still the sole owner." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 687 n 2; 880 NW2d 269 (2015).

[4] Defendant did not timely answer the complaint, and plaintiffs obtained entry of a default. Defendant moved to set aside the entry of a default, claiming good cause and a meritorious defense, and the trial court granted defendant's motion. The default ruling is not challenged in this appeal.

working toward the closure of the sale when she learned of a problem from the title company. Specifically, Deehan's property interest was not in the chain of title, and the ownership of the property was attributed to a deceased married couple. To remedy the situation, there was a discussion to open probate estates for the deceased couple to sell their interest to Deehan for ultimate sale to plaintiffs. But, Strozeski would not complete that process. Before the problem could be remedied, Deehan died in the spring of 2020. Upon Deehan's death, Strozeski's authority to act as his guardian ended and the probate court entered an order discharging her role as guardian.

When Strozeski acted as Deehan's guardian, she was unaware of his execution of a Lady Bird deed or the deed's recording. She opined that the offer and proposed sale were not unusual guardianship transactions until the title issue arose. Strozeski acknowledged that a down payment or earnest money was never paid by plaintiffs; she never accepted any money for the property. Strozeski understood that the court's approval of the order allowed her to sign the purchase agreement, but she did not. And, there was no language in the court order that allowed Strozeski to sign the purchase agreement. Nonetheless, Strozeski believed that her actions complied with applicable probate statutes. Upon questioning by the court, Strozeski indicated that she generally did not sign the purchase agreement. After obtaining a court order approving a sale, the closing usually occurred within four weeks. The sale was completed premised on the "title work" and Strozeski would sign a *deed*, not the purchase agreement.

At trial, Cody testified that he owned property adjacent to Deehan's property. Plaintiffs sought to build a home on their land and needed electricity. Cody contacted the public guardian to obtain authorization for the electricity to come from the direction of Deehan's property and learned that Deehan's property needed to be sold. Deehan's property was more suitable for building a home. To prevent depletion of plaintiffs' assets, plaintiffs and their parents went to a bank and were approved for a loan to purchase Deehan's property. To determine the sale price of $28,000, Cody consulted the county's state equalized value[5] and subtracted the cost to remove debris. Cody testified that Thumb Bank and Trust appraised the property and provided the financing.[6] Cody prepared the purchase agreement at the request of the public guardian's office by consulting online resources. After acquiring the bank financing, the agreement was being finalized when the title issue arose.

---

[5] Although the petition submitted by Strozeski stated that the current state equalized value of the property was $44,600, she did not offer testimony justifying the submission of a $28,000 purchase price. And, a transcript of the probate court hearing on the petition to approve the sale of real estate was not provided. In her documentation seeking to set aside the default for good cause and a meritorious defense, defendant cited to the purchase price of Deehan's property at nearly one-quarter of its market value.

[6] Although Cody testified that Thumb Bank and Trust conducted an appraisal and provided the financing, the exhibits reflect that Team One Credit Union approved the financing to plaintiffs alone, not their parents. An appraisal from any financial institution was not found in the lower court record.

Plaintiffs received notice of the hearing on the petition to approve the sale which Molly and her mother attended. The court approved the sale at the hearing. The closing was delayed because it was learned that Deehan never recorded his purchase of the property. Within two months, Deehan died. After the death, Cody learned of a quitclaim deed from Deehan to defendant. Despite defendant's ownership interest in the property, Cody learned that the property was subject to foreclosure because of nonpayment of taxes. To prevent the property from going into foreclosure, in 2021, Cody paid the outstanding taxes for 2019 and 2020.

Plaintiffs sought to enforce the purchase agreement and require defendant to comply with its provisions. Therefore, Cody wanted the property taxes prorated to the date of closing. He also wanted outstanding property taxes for 2021 and 2022 to be deducted from the purchase price and defendant's payment of the transfer tax. Plaintiffs, however, were willing to waive a termite inspection, a seller's warranty regarding building or zoning violations, a roofing and other inspections, lease discharges, mechanics' liens, surveys, insurance requirements, risk of loss before closing, property maintenance, and property disclosures, including lead paint.[7] Plaintiffs sought to have the closing occur as soon as possible and would prepare the necessary deed. Additionally, plaintiffs acknowledged the title problem and were willing to rectify the title issue at their own expense. Cody reiterated his request for specific performance. If the trial court did not grant this relief, Cody sought a judgment for the payment of the delinquent property taxes.

At the close of plaintiffs' proofs, defense counsel moved for dismissal. Specifically, he asserted that the purchase agreement did not comply with sales agreements under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, or the statute of frauds, MCL 566.108, in light of the seller's failure to sign the purchase agreement. Defendant further argued that dismissal of the complaint was warranted because of the cloud on the title caused by Deehan's omission from the chain. In response, plaintiffs claimed that the probate court's approval of the petition and sale complied with the statute of frauds memorandum requirement. Although Strozeski did not sign the purchase agreement, plaintiffs asserted that her signature on the petition reflected her intent and agreement to sell Deehan's property. After argument addressing the dismissal of plaintiffs' complaint, defendant opted not to present any proofs.[8]

---

[7] Curiously, Cody testified that plaintiffs were willing to waive a multitude of provisions delineated in the purchase agreement, including title defects despite the fact that Deehan was completely omitted from the chain of title. Yet, the approval letter from Team One Credit Union indicated that approval may be withdrawn "if the value of the property declines or is further encumbered." The approval letter was also subject to a fully executed "Purchase Agreement, Seller Disclosures and Lead Based Pain Disclosure." Therefore, it is questionable whether plaintiffs could waive the requirements of the purchase agreement referenced by Cody in light of the approval letter's terms.

[8] Defendant was present during the trial. When Cody testified that he was prepared to purchase defendant's property that day, defendant expressed that she was "done," wanted "legal aid," and was prepared to leave. She expressed dissatisfaction with the probate proceedings. At one point, she stood up and apparently held a sign addressing civil rights. After discussion with her counsel and the trial court, defendant opted to stay. She was not called to testify.

Following the opportunity for closing arguments, the trial court ruled:

So in this case, a Complaint was filed by the Plaintiffs requesting two claims or two forms of relief. The first being specific performance, the second being a money judgment for the amount of the taxes that were paid. I do believe that the Order is certainly valid and to [plaintiffs' counsel's] point, I am not going to allow the Defendant to collaterally attack the Order but I also think what is relevant here is MCL 700.5422. What that statute indicates and it starts with - - it is under EPIC of course, and talks about a conservator which in this case I believe would be analogous to Ms. Strozeski although she was a guardian but she was essentially acting as a conservator when she sought to sell the property. A conservator shall record an order allowing the sale, disposal, mortgage, or pledge of, or placement of a lien on real property under section 5423 and the records of the Register of Deeds for the county in which the real estate is located unless the order has been recorded or a person to whom an interest in real estate is transferred has been given a copy of the order, the person is not entitled to presume that the conservator has the power to sell or otherwise dispose of the real property or to mortgage, pledge or caused a lien to be placed on the protected individual's real property as applicable. Essentially, what that statute is talking about is the Amended Order that is part of Exhibit #1. That a proposed buyer such as [Cody] is not allowed to presume that Ms. Strozeski has the ability or authority to sell that property unless that Order was recorded or provided to him. In this case, I have no doubt that a copy of the Order was provided to him, in fact, he used it as an exhibit but my point is this. She has to file the petition to get that order. She has to and you cannot as a third party even presume she has the ability to sell until she actually has that order, so the order is what gives her the authority to sell and I think what is just as important is actually a plain reading of the Order itself, the exact language of it. If you look about half way down it says, it is ordered and then it starts with number seven. So the Judge is saying this, it is ordered, the petition is granted, so that petition of course was the petition to sell the real property to [plaintiffs]. The . . . office of St. Clair County Public Guardian is authorized to sell to [plaintiffs] the property described above for 28,000 and under the following terms and conditions and it goes on but it specifically says, is authorized to sell. It does not say it is ordered to sell, is obligated to sell, so in my opinion this gives - - this Order gave the Guardian the authority to sell the property to [plaintiffs] but not the obligation to sell the property to [plaintiffs]. It gave her the authority to enter into the agreement, which then would have obligated her to sell. And when I say the agreement, I am talking about the purchase agreement that [Cody] drafted. If [Ms.] Strozeski had signed that agreement following that Order, there is no doubt in my mind she would have been obligated to sell the property to [plaintiffs] but she never signed it and the Statute of Frauds requires a document to be signed by the party against who you are trying to enforce it as [plaintiffs' counsel] referenced unless it is for a lease less than one year. I do not believe the petition qualifies to be that document because it is the document that is required to obtain the order that simply allows you to presume she has the ability to sell it, not the document that enters her into the obligation to get it so the document is required for her to file to get an order to say that she is authorized to sell so I am going to deny [plaintiffs'] claim for specific performance.

I do not believe the guardian had the obligation to sell and for [plaintiffs], I am sorry. You didn't do anything wrong but if [Ms.] Strozeski had simply signed the agreement before Mr. Deehan had died following the Order with the authority to sell, I believe that you would have been successful on that claim. However, I am going to find a money judgment in favor of [plaintiffs] in the amount of 1,765 dollars and 27 cents against Ms. Deehan and they are entitled to judgment interest as of the day the Complaint was filed.

The trial court's ruling was reduced to a written judgment from which plaintiffs appeal.

## II. STANDARD OF REVIEW

Issues involving statutory interpretation present questions of law that are reviewed de novo. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 714; 909 NW2d 890 (2017). The proper interpretation of a contract presents a question of law reviewed de novo. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2013). Whether equitable relief pertaining to a contract is proper under a particular set of facts also presents a question of law that is reviewed do novo. See *Johnson Family LP v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). On appeal, the trial court's factual findings rendered in a bench trial are reviewed for clear error, but its conclusions of law are reviewed de novo. *Florence Cement Co v Vettraino*, 292 Mich App 461, 468; 807 NW2d 917 (2011). "A factual finding is clearly erroneous if there is no substantial evidence to sustain it or if, although there is some evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Miller-Davis Co*, 495 Mich at 172-173. The clear error review of factual findings also gives deference to the trial court's superior ability to assess the credibility of the witnesses. *Id*. at 172.

## III. ANALYSIS

Plaintiffs contend that the trial court erred by failing to conclude that Strozeski's petition to the probate court constituted a signed contractual memorandum that satisfied the statute of frauds. We disagree.

MCL 566.108 addresses contracts for the sale of lands and provides:

Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing: Provided, That whenever any lands or interest in lands shall be sold at public auction and the auctioneer or the clerk of the auction at the time of the sale enters in a sale book a memorandum specifying the description and price of the land sold and the name of the purchaser, such memorandum, together with the auction bills, catalog or written or printed notice of sale containing the name of the person on whose account the sale is made and the terms of sale, shall be deemed a memorandum of the contract of sale within the meaning of this section.

Statute of frauds were created "for the purpose of preventing fraud or the opportunity for fraud, and not as an instrumentality to be used in the aid of fraud or prevention of justice." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 456-458; 733 NW2d 766 (2006) (quotation marks and citation omitted). The issue of whether a statute of fraud bars the enforcement of a contract is reviewed de novo as a question of law. *Id*. at 456 (citation omitted). To comply with the statute of frauds, a property interest will appropriately transfer if, "all parties possessing an interest in the subject property . . . sign the document." *Zaher v Miotke*, 300 Mich App 132, 141; 832 NW2d 266 (2013). A plaintiff seeking specific performance of the contract has the burden of establishing all the elements of a contract. *Fisk v Fisk*, 328 Mich 570, 574; 44 NW2d 184 (1950). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015).

> To satisfy the statute of frauds, there must be a writing signed by either (1) the party making the sale or (2) a person lawfully authorized in writing to act on behalf of the person making the sale. [*Eerdmans v Maki*, 226 Mich App 360, 365; 573 NW2d] 329 (1997) (citation omitted).]

"The necessity of a written authorization in order to bind an individual . . . to the terms of a purchase agreement signed by a third party . . . is clearly set forth in the statute of frauds." *DeWald v Isola*, 180 Mich App 129, 135; 446 NW2d 620 (1989). And, "it is well settled in the common law that an oral promise to sell land is not enforceable and that a contract to sell property signed by a third party for the owner but without the written authorization of the owner is not enforceable." *Id*. (citation omitted). A specific test for the statute of frauds is not required, and a case-by-case approach is applicable:

> There are few, if any, specific and uniform requirements. The statute itself prescribes none; and a study of the existing thousands of cases does not justify us in asserting their existence. Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute depends in each case upon the setting in which it is found. [*Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 368; 320 NW2d 836 (1982) (citation omitted).]

In the absence of the signature of an owner or co-owner of the property, a contract for the sale of land is void. *McFadden v Imus*, 192 Mich App 629, 633; 481 NW2d 812 (1992). "[T]he writing requirement of the statute of frauds may be satisfied by several writings made at different times." *Kelly-Stehney & Assoc v MacDonald's Indus Prods*, 265 Mich App 105, 114; 693 NW2d 394 (2005).

In *Eerdmans*, the plaintiff attempted to purchase an undeveloped tract of land in Kent County from owners Jeneane and Allen Parmenter and listed for sale by broker Clint Maki. Allen Parmenter was subject to a conservatorship. The plaintiff learned of the property through a newspaper advertisement and contacted Maki. Maki discussed the property with the plaintiff and disclosed that he was the seller's agent. Maki advised that $465,000 cash was the listing price set by the seller, and the sale entitled Maki to a seven percent commission. Maki assured the plaintiff that if he agreed to pay $465,000 in cash, the seller could not back out of the transaction. Although

the plaintiff agreed to pay the list price in cash, he preferred to pay a higher sale price of $485,000 on land contract. Maki prepared two buy/sell agreements to reflect the plaintiff's terms, a cash purchase or the land contract. The plaintiff signed both agreements, and Maki signed the agreements as a witness. The owners never signed the agreements and sold the property to a third party for $560,000. The plaintiff filed suit for breach of contract against the Parmenters. *Eerdmans*, 226 Mich App at 361-363.

This Court rejected the plaintiff's contention that the newspaper advertisement and the listing agreement constituted an offer for purposes of establishing a contract. Additionally, we rejected the assertion that the statute of frauds was satisfied, holding:

> Finally, plaintiff cannot rely on the "Buy and Sell Agreement" prepared by Maki because this document was not signed by either of the sellers and, therefore, does not satisfy the statute of frauds. Maki's signature as a witness was insufficient to bind the sellers because Maki was not "lawfully authorized in writing" to conclude the sale on their behalf. Although the listing agreement purported to give Maki the authority to arrange the sale, it did not give Maki authority to conclude the sale and it did not give Maki any authority whatsoever to act on behalf of Allen Parmenter, whose conservator did not sign the agreement. Thus, because plaintiff's breach of contract claim suffers deficiencies that cannot be overcome, we hold that the trial court did not err in granting summary disposition in favor of Jeneane Parmenter. [*Eerdmans*, 226 Mich App at 365-366 (citations omitted).]

In light of *Eerdmans*, we agree with the trial court that the statute of frauds was not satisfied. Indeed, Strozeski filed a petition seeking approval of her intent to sell Deehan's Snover property to Cody for $28,000 despite its state equalized value of $44,600. Although Strozeski signed the petition seeking court approval, plaintiffs were the only parties that signed the purchase agreement with Cody signing as a purchaser and Molly signing as a witness. Strozeski testified that she did not sign the purchase agreement and generally would not sign the purchase agreement. Instead, she typically signed the *deed at the time of closing*. Furthermore, consistent with *Eerdmans*, the trial court may have authorized Strozeski, as Deehan's public guardian, to arrange the sale, but it did not give her the authority to *conclude* the sale. That is, Strozeski was still required to ensure that the transaction met the requirements of the purchase agreement. The purchase agreement provided:

> 14. **Documents for Closing:** Seller's attorney shall prepare deed, note, mortgage, Seller's affidavit, any corrective instruments required for perfecting the title, and closing statement and submit copies of same to Buyer's attorney along with a title commitment for an owner's title policy and a current survey certified by a licensed surveyor dated no more than 6 months prior to closing, and copy of closing statement to the broker, at least 2 days prior to scheduled closing date.

In the course of complying with this provision, Strozeski learned from the title search that Deehan's property interest was not found in the chain of title, and the property was purportedly owned by a deceased couple. There was a discussion that probate estates could be opened for the deceased couple to sell the property to Deehan and then to plaintiffs. But, Strozeski testified that she would not have completed that process. Before the title issues could be resolved, Deehan died

and Strozeski's role as his guardian ended. Irrespective of the court's approval to sell the Snover property, Strozeski did not sign a purchase agreement or a deed to property in which Deehan held an identifiable titled interest at the pertinent time.[9] Accordingly, the trial court properly entered judgment in favor of defendant on plaintiffs' claim for specific performance[10] because the statute of frauds was not satisfied.[11]

Affirmed.

/s/ Anica Letica
/s/ Kristina Robinson Garrett

---

[9] The general rule is to apply the law in effect at the time of a decision. *MacDonald Advertising Co v McIntyre*, 211 Mich App 406, 410; 536 NW2d 249 (1995). When attempting to close on the property sale, a title search did not indicate that Deehan held an interest in the property. Thus, at the time of the closing, Deehan could not provide a perfected title interest as required by the purchase agreement, a document prepared by Cody. Therefore, the sale was not completed before Deehan's death, and Strozeski's guardianship ended. Apparently, after Deehan's death on April 20, 2020, his home was searched for documentation to uncover Deehan's interests and agreements. Through this search, defendant then discovered that Deehan executed a Lady Bird or quitclaim deed to the property on January 31, 2013. But, the drafting attorney had not recorded the deed because of Deehan's failure to pay the recording fee. The deed to the property was recorded on May 18, 2020. Plaintiffs claim to enforce, through specific performance, the agreement with Strozeski against defendant. Yet, they sought to waive provisions of Cody's drafted purchase agreement and terms of the credit union's approval letter to which Strozeski did not agree and to which defendant has not agreed. At the bench trial, a representative of the credit union did not testify if it would continue to provide the financing when a recorded conveyance of the property from the Wheelers to Deehan was lacking and whether the conditions in the approval letter were still met.

[10] It is also noteworthy that, to obtain specific performance, plaintiffs had the burden of establishing all elements of a contract. *Fisk*, 328 Mich at 574. As noted, the elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *AFT Mich*, 497 Mich at 235. Again, plaintiffs entered into the contract with Strozeski in her capacity as Deehan's guardian. She testified that the purchase agreement did not proceed to closing because the title search did not reveal any interest held by Deehan. Before any action could be taken to address the title deficiency, Deehan died on April 20, 2020, and Strozeski's role as his guardian ended. About a month after the Deehan's death, on May 18, 2020, the Lady Bird deed was recorded reflecting Deehan's transfer of his interest in the Snover property to defendant. It is noteworthy that plaintiffs do not present a contractual agreement with defendant or demonstrate how their unsigned purchase agreement with Strozeski may be enforced against defendant instead of Deehan's estate.

[11] In light of this disposition, we need not address the trial court's analysis related to MCL 700.5422 and 700.5423.