**BANQUE de DEPOTS, Plaintiff-Appellee,**

v.

**NATIONAL BANK OF DETROIT, Defendant-Appellant.**

No. 73–1327.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1973.

Decided Feb. 14, 1974.

Patrick J. Ledwidge, Detroit, Mich., for defendant-appellant; Dickinson, Wright, McKean & Cudlip, Detroit, Mich., on brief.

G. Cameron Buchanan, Detroit, Mich., for plaintiff-appellee; Alexander, Buchanan & Seavitt, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, and WEICK and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The events which led up to this controversy began in the Spring of 1971. Wilford O. Dunkel, a wealthy Michigan resident and share-holder of Champion Home Builders Company, (hereinafter "Champion") found himself in need of large amounts of cash. He determined to use his Champion stock, which at that time consisted of more than 296,000 shares worth in excess of $7,000,000, as collateral for the antici-pated loan. For various reasons he preferred not to obtain the loan from an American source and decided to negotiate with foreign lenders. Through an acquaintance he was put in contact with James Dondick, an American citizen who was in Switzerland. Dondich agreed to help Dunkel obtain the loan.

At this point the litigant banks entered the picture. Dunkel was a customer of National Bank of Detroit (hereinafter "National Bank"), the defendant-appellant herein. He asked National Bank to do two things: (1) receive from him and hold certificates for shares of Champion stock for the security for the loan he was arranging; and (2) use its international telex facilities to transmit messages on his behalf.[1] National Bank agreed to do this. Meanwhile, Dondich began meeting with officials of Banque de Depots in Geneva, Switzerland, and negotiating for a loan of 1.5 million dollars on the strength of 260,000 shares of Champion stock.

Dunkel delivered to National Bank certificates for shares of Champion in an amount sufficient to raise the total number of shares of Champion held by the Bank to 296,400. Immediately prior to this visit Dunkel was indebted to National Bank in the amount of $927,000 and this indebtedness was secured by Champion stock already in the Bank's possession. On June 24, 1971, a telex message originating from the National Bank was sent to Banque de Depots which read as follows:

"We confirm we hold in our collateral file 267,000 shares of Champion Home Builders Co. common stock. These shares have been authenticated and verified by our bank. The assignments of these shares have been executed by Mr. Dunkel and Mr. Dunkel, a customer of this bank has asked

1. The use of telex communication systems is a common method of communication between banks, particularly for trans-Atlantic exchange of information. A telex machine is essentially a typewriter with a capacity for electronic transmission of the material typed and also capacity for electronic reception, and automatic typing, of incoming messages. It is further common among banks to utilize privately arranged number codes as a means of authenticating the identity of the bank sending the message. These code numbers are often called "key tests."

that we inform you that James Dondich, passport No. J1187001 is authorized to pledge these shares for a loan up to an amount of dollars 3,500,000 U.S. currency."

Banque de Depots' reply was in the form of a question.

"Are these shares free of all restrictions in particular fully registered and freely tradeable?"

National Bank answered that,

"the 267,000 shares of Champion Home Builders Co. stock which we hold are free of all restrictions and are freely tradeable on the American stock exchange."

To make certain that there was no error, Banque de Depots sent a telex to the National Bank on June 25th seeking confirmation:

"Re our exchange of telexes in the Champion Home/Dunkel/Dondidge (sic) matter. Please authenticate message and your authority thru Swiss Bank Corporation. Sorry this inconvenience which due to my no code with you. I advised Swiss Bank Corporation here of this telex."

The import of this message was that Banque de Depots wanted the additional assurance of authenticity that a "key tested" message would provide. A "key tested" telex message is essentially equivalent to a signed letter.

National Bank sent the requested "key tested" telex to the Swiss Bank Corporation which relayed it to Banque de Depots. The message contained the same information that had been previously exchanged, namely, that National Bank was holding 267,000 shares of Champion stock in a collateral file for Banque de Depots and that Dondich was authorized to pledge the shares for a loan up to $3,500,000.

After receiving the "key tested" telex from the Swiss Bank Corporation on June 28, 1971, Banque de Depots entered into a loan agreement with Dondich, received his note, and made a loan to him for $500,000, the bank's loan limit.

Thereupon it sent a telex to National Bank which read as follows:

"We have granted loan to Mr. Dondich and as per your above tested telex we assume the shares are now under our control . . . please confirm . . . ."

The Dondich note was presented for payment in accord with its provisions, but it was not paid. Banque de Depots demanded that National Bank make the note payment or deliver the collateral. National Bank refused.

Banque de Depots brought suit against both Dunkel and National Bank seeking either a money judgment or delivery of the Champion stock. National Bank's answer denied any liability to Banque de Depots and asserted that the Bank was only acting as Dunkel's agent in sending the telexes. Dunkel likewise denied liability. Banque de Depots then filed a motion for summary judgment against National Bank alone. National Bank filed motions for leave to amend its answer in the form of a counterclaim and cross-claim for interpleader, and a cross-claim for indemnification. The motion to amend the answer in the form of interpleader was denied, and, the motion for a cross-claim amendment was not ruled upon. At the commencement of the trial Banque de Depots moved for dismissal of Dunkel under Rule 41, Fed. R.Civ.P., and the District Court, over the objection of National Bank, entered an order to that effect.

The case proceeded to trial before a jury. Banque de Depots based its claim on the theory that the telex messages constituted a contract between the litigant banks and that National Bank breached that contract. It also alleged that the statements made by National Bank in the telexes were false and amounted to misrepresentations. National Bank denied the existence of a contract and contended it was not liable for the alleged misrepresentations even if there were any. National Bank perfected this appeal from a judgment entered in favor of Banque de Depots on the jury's verdict.

National Bank asserts that as a matter of law the telex communications between it and Banque de Depots were insufficient to form a contract. This argument is based on two points: (1) that there was not the necessary meeting of the minds to form a contract; and (2) that the communications were merely preliminary negotiations. Both parties agree that Michigan law is applicable.

The Michigan courts have adopted and repeatedly reaffirmed the basic tenet of contract law that a "meeting of the minds" upon all essential points is necessary to constitute a valid contract. Professional Facilities Corporation v. Marks, 373 Mich. 673, 131 N.W.2d 60 (1964); Fisk v. Fisk, 328 Mich. 570, 44 N.W.2d 184 (1950). National Bank claims that a number of material terms in the alleged contract were not agreed upon and, therefore, the requisite meeting of minds never took place. "To say . . . that a contract requires a 'meeting of the minds' is only a figurative way of saying that there must be mutual assent. This we judge by an objective standard, looking to the expressed words of the parties and their visible acts." Goldman v. Century Ins. Co., 354 Mich. 528, 535, 93 N. W.2d 240, 243 (1958). In the case before us the "expressed words of the parties and their visible acts" were contained in the telex messages. The telexes clearly stated that National Bank was holding 267,000 shares of Champion stock in a collateral account for Banque de Depots and that Dondich was authorized to pledge this collateral for a loan up to $3,500,000. National Bank argues that it never intended for Banque de Depots to lend money to Dondich, but the meaning that Banque de Depots attached to the messages was reasonable. "If one party has knowingly or negligently misled the other by his use of words . . . . he can not escape responsibility by proving his own meaning and intention." 1 A. Corbin, Contracts, § 106, at 477 (2d ed. 1963). We find no error in the Trial Court's conclusion that an enforceable contract existed between the parties. Similarly, we see no merit in the contention that the telexes were merely preliminary negotiations.

Banque de Depots' alternative theory at trial was that two statements made by National Bank in the telex messages were untrue and constituted actionable misrepresentations. The statements were that "the 267,000 shares of . . . stock which we [National Bank] hold are free of all restrictions" and, "we pledge [the stock] for the collateral account of Banque de Depots." National Bank contends that the statements were true and that even if untrue were innocently made. Further, it asserts that the misrepresentation issue was erroneously submitted to the jury because under Michigan law an action for misrepresentation cannot be sustained when there is no intent to deceive and the defendant is neither a party to the transaction nor receives the benefit of plaintiff's loss.

Michigan law does indeed require proof, in the case of an innocent misrepresentation, that the culpable party benefited from the other party's injury. Kroninger v. Anast, 367 Mich. 478, 116 N.W.2d 863 (1962); Essenburg v. Russell, 346 Mich. 319, 78 N.W.2d 136 (1956); Rosenburg v. Cyrowski, 227 Mich. 508, 198 N.W. 905 (1924). In order to prevail upon this issue, however, National Bank must show that the statements were true or that the misrepresentations were innocently made. It has failed on both counts. It is abundantly clear from the evidence that the stock was not free of all restrictions because part of it was hypothecated to National Bank for the $927,000 loan, and it is equally clear that a collateral account was never set up for Banque de Depots. These statements were not, as National Bank suggests, merely misunderstood by Banque de Depots, they were false.

The second part of the question is whether the false statements were made innocently. The Michigan courts have recognized that a misrepresentation made "recklessly" is the same as one made "intentionally." Callihan v.

Talkowski, 372 Mich. 1, 124 N.W.2d 788 (1963); Aldrich v. Scribner, 154 Mich. 23, 117 N.W. 581 (1908). In this case National Bank knew or should have known that Banque de Depots was relying on the truth of the statements made by it in the telex messages. National Bank was, at the very least, acting recklessly when it sent the telexes. We conclude that the resulting misrepresentations were actionable under Michigan law and that this issue was properly submitted to the jury.

■ National Bank maintains that the District Court erroneously denied its motions to amend its answer. "Rule 15(a) F.R.Civ.P. provides in pertinent part that 'a party may amend his pleading only by leave of court * * *; and leave shall be freely given when justice so requires.' It is well established that allowance or refusal to permit amendment lies in the discretion of the district court and 'is not subject to review on appeal except for abuse of discretion * * *.' 3 Moore's Federal Practice, para. 15.08(4)." Komie v. Buehler Corp., 449 F.2d 644, 647 (9th Cir. 1971). That is the rule in this Circuit as well. Willard Dairy Corp. v. National Dairy Corp., 309 F.2d 943 (6th Cir. 1962), cert. denied, 373 U.S. 934, 83 S.Ct. 1554, 10 L.Ed.2d 691 (1963).

■ National Bank cites Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L. Ed.2d 222 (1962), in support of the proposition that in the absence of such factors as undue delay, bad faith, undue prejudice, and futility it is an abuse of discretion for a district court to deny an opportunity to amend. It also asserts that none of the above elements were present in this case. The Supreme Court did not, however, consider the above factors standing alone to be controlling, for in the same paragraph it mentions that discretion is abused only if amendment is denied "without any justifying reason . . . ." 371 U.S. at 182, 83 S.Ct. 227. In the instant case the record reveals that the Bank's request for permission to amend its answer in the form of defensive inter-

pleader was on shaky ground because of the questionable applicability of interpleader in this factual setting. Further, the cross-claim against Dunkel would, in the District Court's opinion, have worked an undue hardship on him. We cannot say, in light of the record, that the District Court clearly abused its discretion in denying National Bank's motions to amend.

■ In this same vein National Bank claims that Dunkel's dismissal from the suit at the beginning of the trial was clearly erroneous. The applicable rule is Rule 41(a)(2), Fed.R.Civ.P., which reads in part as follows: "[A]n action shall not be dismissed at the plaintiff's instance save upon order of the court . . . . If a counterclaim has been pleaded by a defendant . . . the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court." National Bank's attempt to amend its answer having failed, there was no counterclaim before the Court and thus, Dunkel's dismissal was within the sound discretion of the Court. Armstrong v. Frostie Co., 453 F.2d 914 (4th Cir. 1971); Willard Dairy Corp. v. National Dairy Corp., supra; Moore, Federal Practice ¶ 41.05, at 1055 (2d ed. 1971). The District Court felt that Dunkel's remaining in the suit would prejudice both Dunkel and Banque de Depots, and conversely, his dismissal would not prejudice National Bank. Regardless of any reservations we might otherwise have harbored, we must defer to the Trial Court's exercise of discretion.

■ The final assignment of error relates to the computation of interest. The adverse parties stipulated that the District Court should determine the manner in which interest would be computed. After noting the applicable Michigan law, the Court found that the Dondich note carried an 8½% interest rate. In addition, it held that the note was the obligation out of which the breach arose and, therefore, Banque de Depots was entitled to an amount equal

to the face amount of the loan plus fees and interest at the rate of 8½% from June 29, 1971, to the time of the judgment. We have examined National Bank's arguments on this issue and find them to be without merit.

For the reasons hereinabove appearing, the judgment of the District Court is affirmed.