**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0145n.06

**No. 12-2296**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JASMINE GUY JORDAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| CITY OF DETROIT, *et al*., | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COUNTY OF WAYNE; JOHN DOE 1-2, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**Before:  COLE and GRIFFIN, Circuit Judges; PEARSON, District Judge.**[*]


**BENITA Y. PEARSON, District Judge.**  Jasmine Guy Jordan ("Plaintiff") appeals the district court's order granting summary judgment to Wayne County ("Defendant") on Plaintiff's claims under 42 U.S.C. § 1983 for (1) maliciously prosecuting him without probable cause in violation of the Fourth Amendment and for (2) failing to protect him while being held as a pretrial detainee in violation of the Fourteenth Amendment.  For the reasons that follow, we affirm the district court's rulings.

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

### I. Factual and Procedural Background

On October 30, 2007, Donn Richardson was shot and killed while being robbed on the street near his residence. Richardson's fiancée, Linda Milliner, witnessed the robbery. She told responding police officers that three men participated in the robbery, one of whom held a gun. She described the man with the gun as a nineteen-year-old black male wearing a gray sweat jacket and hat, standing five feet eight or nine inches tall, weighing about 160 pounds, with short hair and a light skin complexion. Milliner was unable to describe the other two men whom participated in the robbery.[1]

Shortly after the shooting, police officers saw Plaintiff, then seventeen years old, and his twenty-one-year-old brother, Cornell Massey, walking near the scene of the shooting. The officers stopped Plaintiff and Massey because of their youthful appearances and because Plaintiff fit the description of the man Milliner had described. Plaintiff weighed 220 pounds, has a dark complexion, was wearing a white and gray hoodie as opposed to a hat, and had a mustache and a goatee. Officers released Massey but detained Plaintiff on a curfew violation. They placed him in the back of a police car and transported him to the scene of the shooting.

---

[1]Milliner did not see the shooting. According to her testimony at the preliminary examination, Milliner observed the robbery from the window of her residence. The man holding the gun saw her in the window and indicated that she should move away from the window. Milliner did so. When Milliner heard gunshots she looked out the window again, and she saw the men fleeing and her fiancé on the ground.

When Plaintiff arrived at the scene, an officer pointed at Plaintiff sitting in the back of the police car and asked Milliner whether he was the shooter. Milliner said that he was. As a result of Milliner's positive identification, Plaintiff was arrested.

A preliminary examination to determine probable cause to bind Plaintiff over for trial was held on November 20, 2007. The only evidence, aside from stipulations, was Milliner's testimony. She testified that she observed the robbery from the window of her residence. In court, Milliner identified Plaintiff as the man she had previously identified at the scene, and again identified him as the man who held the gun. During cross examination, Milliner was asked about: her ability to observe the incident; her initial description that she gave to police of the man with the gun; and the manner in which Plaintiff had been presented to her for identification at the scene. The state court judge, citing Milliner's sworn testimony, found probable cause to hold Plaintiff criminally liable for the homicide of Richardson, and bound Plaintiff over to a grand jury. About three months later, the state court granted the prosecutor's motion to dismiss the charges against Plaintiff without prejudice because Milliner failed to appear at trial.

Unbeknownst to the state court and Plaintiff, a few days after the shooting but prior to Milliner's testimony at the preliminary examination, Milliner went to the police station and identified another man from a photo line-up— Juan Johnson, as the man with the gun.

Meanwhile, upon his arrest in early November 2007, Plaintiff was taken to the Wayne County Jail. Although seventeen at the time, he was housed with adult prisoners for four months while the felony charges were pending against him. Plaintiff alleges that during his detention he was

subjected to threats of physical harm by other inmates, verbally abused by jail officials, and attacked by inmates on at least two occasions in February 2008.

Plaintiff initiated the underlying civil lawsuit and asserted two claims against Defendant under 42 U.S.C. § 1983.[2]  Count I, a malicious prosecution claim, alleged that Defendant detained and prosecuted Plaintiff without probable cause in violation of the Fourth Amendment.  Count III, a deliberate indifference claim, alleged that Plaintiff's detention in the adult population at the Wayne County Jail and Defendant's failure to protect him there constituted deliberate indifference in violation of his right to due process of law under the Fourteenth Amendment, and was a result of Defendant's systematic failure to enforce its own rules and regulations.

The district court granted Defendant's motion for summary judgment on both counts. Plaintiff filed a motion for reconsideration, which the district court denied.  Plaintiff now appeals the district court's grant of summary judgment to Defendant on his § 1983 claims.  He also argues that the court erred in granting summary judgment in light of its rulings on discovery matters, and that the court failed to follow the correct evidentiary standards.

---

[2]Plaintiff also brought a 42 U.S.C. § 1985 conspiracy claim for depriving Plaintiff of his constitutional rights.  The district court granted summary judgment to Defendant on this claim. Plaintiff makes no mention of this ruling in his brief on appeal, nor does he mention the court's grant of summary judgment to John Doe 1 and 2.  Because Plaintiff has failed to preserve these issues for appeal, we will not consider them.  *See* Fed. R. App. P. 28(a)(5) ("appellant's brief must contain . . . . a statement of the issues presented for review"); *see also Thaddeus–X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (issues not presented to the court in initial briefs on appeal are deemed waived).

## II. Standard of Review

Because the district court granted summary judgment in favor of Defendant, we apply a *de novo* standard of review. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). The district court's grant of summary judgment should be affirmed "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The reviewing court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *White*, 533 F.3d at 390. An issue of fact is "genuine" if "a reasonable jury could return a verdict in favor of the non-moving party." *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298 (6th Cir. 2008); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "A factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013) (citing *Niemi*, 543 F.3d. at 298–99). "After the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth 'specific facts showing that there is a genuine issue for trial.'" *Farhat v. Jopke*, 370 F.3d 580, 587-88 (6th Cir. 2004) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When no genuine issues of material fact exist, we review *de novo* the district court's conclusions of substantive law. *Farhat*, 370 F.3d at 588.

## III. Discussion

### A. Malicious Prosecution Claim

To succeed on a malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was

a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).

The district court found that Plaintiff's malicious prosecution claim was barred by the doctrine of collateral estoppel. Plaintiff appeals this holding and argues that his claim is not collaterally estopped. The district court also found,

> [e]ven were the court to assume that Plaintiff's malicious prosecution claim is not subject to the preclusive effect of collateral estoppel, Defendant Wayne County would nevertheless be entitled to summary judgment because Plaintiff has not proffered any evidence, nor even pled factual allegations in the first-amended complaint, tending to show that a policy or custom of Wayne County was the "moving force" behind his alleged malicious prosecution, a necessary requirement of a § 1983 municipal liability claim.

*Jordan v. City of Detroit*, 2012 WL 2526927, at *7 (E.D.Mich. June 29, 2012). Plaintiff does not challenge this holding.

To succeed on a § 1983 claim against a municipal defendant, a plaintiff must "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (internal quotation marks and citation omitted); *see also Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). The district court correctly noted that Plaintiff failed to produce any evidence of a policy or custom and did not include allegations of a

policy or custom regarding the malicious prosecution claim in the complaint. Plaintiff's claim of malicious prosecution therefore fails on the merits.[3]

We affirm the district court's alternative holding that Plaintiff's malicious prosecution claim fails on the merits.

### B. Rulings on Discovery Matters

Plaintiff argues that the district court erred in granting summary judgment when discovery was incomplete. He states that Defendant "failed to turn over *crucial* information needed to support" his claims. (Emphasis in original.) Plaintiff also argues that the district court should have drawn an adverse inference against Defendant because of its failure to disclose discovery information, although he fails to articulate what specific adverse inference should have been drawn.

### 1. The District Court Did Not Abuse Its Discretion

We review a district court's decision as to the scope of discovery, including the denial of additional time for discovery, under an abuse of discretion standard. *See [Doe v. Lexington-Fayette Urban County Gov't, 407 F.3d 755, 760-61 (6th Cir. 2005)](); [Dowling v. Cleveland Clinic Found., 593 F.3d 472, 478 (6th Cir. 2010)]()*. Factors to be considered are:

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below;

---

[3]Because we affirm on the merits, there is no need to resolve the collateral estoppel issue. This "merits first" approach is consistent with other cases in which we address straightforward merits questions rather than complicated affirmative defenses. *See, e.g., [Desai v. Booker, 732 F.3d 628, 632 (6th Cir. 2013)]()* ("Having concluded that Desai's due process claim fails on the merits, we need not reach the State's alternative argument that he procedurally defaulted the claim."); *[Pough v. United States, 442 F.3d 959, 965 (6th Cir. 2006)]()* (avoiding a non-jurisdictional statute of limitations issue in favor of a straightforward merits-based determination).

> (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995); *Dowling,*

593 F.3d at 478. "The overarching inquiry in these overlapping factors is whether the moving party

was diligent in pursuing discovery." *Id.*

None of the *Plott* factors weigh in Plaintiff's favor. The district court aptly described the

discovery dispute between the parties as follows:

> [o]n December 15, 2012, an earlier discovery dispute was resolved between the parties with the entry of a stipulated order directing Defendant Wayne County to produce various outstanding discovery requests within ten days of the entry of the order. Over the course of the next three months, neither party filed a motion to compel discovery nor contacted the court to seek its assistance in any other discovery matters. The parties were quiet as mice. In spite of the December 2012 order, which placed a ten-day deadline on the production of outstanding discovery requests, Plaintiff's counsel, who now argues that the December 2012 order was not fully satisfied, did not contact Defendant Wayne County's counsel to inform her that discovery requests were still outstanding until March 6, 2012. Nor did he file a motion with this court until the eve of the discovery deadline. The lack of diligence on the part of counsel for both parties during the discovery period certainly makes the requests for sanctions and protective orders less persuasive than they would have been if the issues had been timely brought to the court's attention.

*Jordan*, 2013 WL 2526927, at \*4 n. 7 (internal citations omitted).

Regarding the first *Plott* factor, Plaintiff clearly learned of the subject of the desired

discovery well in advance of the discovery cutoff date. Also, Plaintiff has not shown that the desired

discovery would have changed the ruling below, the second *Plott* factor. As it relates to his

malicious prosecution claim, Plaintiff asserts the crucial information he sought included the

prosecution file and the "In-Car Videos" and "Audio Recordings."[4]  He does not explain how the

recordings would have been crucial or what specifically about the prosecution file would have been

relevant to his malicious prosecution claim.  Moreover, any additional information regarding the

conduct of law enforcement officers during the events that took place on the night of the shooting

would not rectify Plaintiff's failure to identify and plead a policy or custom that caused a violation

of his Fourth Amendment rights.

Plaintiff also complains that, relevant to his due process claim, Defendant did not provide

the name of the corrections officer responsible for housing him with adult prisoners.  This argument

is not well taken.  Defendant identified Eric Troszak and Sylvester Foote as persons involved in the

inmate classification process.  They stated that the identity of the individual that actually made the

decision as to which ward Plaintiff would be housed is unknown.  The district court, considering the

propriety of Defendant's responses, stated,

> [t]hus, contrary to Plaintiff's claims, Defendant Wayne County did not purposely
> withhold the identity of the classification officer or refuse to respond to his discovery
> requests.  Instead, the record shows that Wayne County informed Plaintiff well
> before the close of discovery that after reasonable inquiry it could not identify the
> specific officer that made the decision to house Plaintiff in the adult population.  It
> nevertheless provided Plaintiff with the identity of two officers who were involved
> in the classification process at the jail during the time of Plaintiff's detention.
> Plaintiff apparently made no effort to depose these two officers, nor did he ever
> appear for the properly noticed depositions.  Based on these facts, an adverse
> inference should not be drawn against Defendant Wayne County.

---

[4]The transcript Plaintiff cites, the discovery hearing, does not refer to any videos or
recordings, and the only mention of the prosecution file is made by the court.  Instead, the transcript
reveals that Plaintiff complained about Defendant's conduct in responding to discovery requests.
At no time did Plaintiff voice concern that lack of discovery materials precluded him from
responding to a motion for summary judgment.

*Jordan v. City of Detroit*, 2012 WL 3583535, at \*2 (E.D.Mich. Aug. 20, 2012). Defendant could not provide what it did not have, and Plaintiff was not diligent in pursuing the name of the officer using the information Defendant did provide.

As for the remaining *Plott* factors, the discovery period lasted about seven months, a reasonable time frame. Plaintiff was dilatory in his discovery efforts and was not responsive to discovery requests. Notably, although Plaintiff expresses outrage on appeal that "*not a single deposition* had been taken," (emphasis in original), the record in the district court reveals that Plaintiff: refused to be deposed; canceled scheduled depositions of Defendant's employees; and did not attempt to depose the two individuals whose names Defendant provided relating to Plaintiff's classification at the prison. Additionally, Plaintiff expressed agreement, during the hearing on pending discovery motions, with the district court's inclination to permit Defendant to file a motion for summary judgment without further discovery.[5] We also consider a court's inherent authority to "control its docket in promoting economies of time and effort for the court, the parties, and the parties' counsel." *Gonzalez v. Ohio Cas. Ins. Co.*, 2008 WL 4277258, at \* 1 (E.D.Mich. Sept. 17, 2008) (citing *Landis v. North American Co.*, 299 U.S. 248 (1936)); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 514-15 (6th Cir. 2002).

---

[5]At the hearing, the district court expressed an inclination to hold in abeyance ruling on the discovery disputes and to permit Defendant to file its summary judgment motion in keeping with the original case management dates. The court further stated that if, after reviewing Defendant's motion, Plaintiff required additional discovery material, then Plaintiff would indicate so in his responsive brief. Plaintiff filed a responsive brief 47 days later, without leave of court, and did not indicate that he could not respond to the motion without further discovery.

In light of the above, it cannot be said that the district court abused its discretion in ruling on the discovery matters. The district court's discovery rulings are affirmed.

### 2. There is No Adverse Inference to be Drawn

Plaintiff argues for an adverse inference based on Defendant's alleged failure to provide him with prosecution materials regarding the malicious prosecution claim and, more generally, the due process claim.

"'[T]he general rule is that [w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it.'" *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 712 (6th Cir. 2007) (quoting *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632-33 (6th Cir. 2000)). As already discussed, *supra*, Plaintiff does not identify relevant information in Defendant's possession that Defendant failed to provide him and describe what adverse inference should be drawn. We find that the district court correctly determined that Plaintiff was not entitled to an adverse inference.

### C. Evidentiary Standards Applied to the Due Process Claim

Plaintiff argues that the district court erred in granting summary judgment on his due process claim because Defendant failed to meet its evidentiary burden by failing to point to deficiencies in Plaintiff's claim. Plaintiff also argues that the district court erred because it misconstrued his claim. Plaintiff argues that "the salient question was whether Plaintiff was deprived of a constitutional right by Defendant's 'failure to protect' him after he was housed with the 'adult inmates.'" (Emphasis omitted.)

11

To the extent Plaintiff argues the decision to house him with the adult inmates in general population violated a constitutional right, he fails to identify any custom, policy or practice of Defendant, connect that policy to the Defendant and show it caused a constitutional violation. That omission is fatal to his claim. *See Graham*, 358 F.3d at 383. Plaintiff only cites Defendant's "Jail Operations Manual" which he claims provides that 17-year-olds should not be housed with the general population. He does not advance evidence in support of his allegation that Defendant has a policy or custom not adhering to the operations manual. Instead he merely states that "the [] policy and procedures were *not* adhered in this case." (Emphasis in original.) A single instance, without more, does not amount to a custom, policy or practice. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").[6]

To the extent Plaintiff argues that Defendant failed to protect him, the argument is also without merit. To succeed on such a claim, a plaintiff must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm[,]" and (2) defendant acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Again, Plaintiff offers no proof of any policy or custom that caused a constitutional violation. Moreover, as the district court noted, Plaintiff fails to advance evidence in support of his allegation that he was attacked twice

---

[6]Defendant rejoins, as it did in the district court, that it was permitted to house a 17-year-old charged with a serious crime with the adult population.

while in prison. Plaintiff refused to be deposed; he did not even file an affidavit swearing that he had been attacked. Finally, Plaintiff erroneously places the burden on Defendant to show that the officers were given adequate training—it is not Defendant's burden to show adequate training. *See Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) ("The moving party discharges its burden by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.") (internal quotation marks and citation omitted).

Defendant pointed out to the district court that there was an absence of evidence to support Plaintiff's case, thereby discharging its burden. Plaintiff did not advance any evidence in support of his claim, failing to meet his burden. *See id.* The district court applied the correct evidentiary standards when it granted Defendant's motion for summary judgment, and we affirm the court's ruling.

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.