NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0363n.06
No. 20-6216

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PEARL DUNLAP, | ) | **FILED**<br>Jul 23, 2021<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| SEVIER COUNTY, TENNESSEE, et al., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE  EASTERN |
| Defendants-Appellees. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| | ) | |

BEFORE:  ROGERS, BUSH, and LARSEN, Circuit Judges.

ROGERS, Circuit Judge.  Jesse Dunlap initially filed this action against Sevier County, Tennessee, and its employees and corrections officers, alleging violations of his constitutional rights while he was an inmate in the county jail.  Seven months into the discovery period, Mr. Dunlap died.  Mr. Dunlap's attorney commenced proceedings to appoint an administrator for his estate.  While the probate process was pending, Mr. Dunlap's attorney spent several months attempting to negotiate a settlement and making informal discovery requests, but did not seek to stay discovery or modify the scheduling order.  Four months after Mr. Dunlap's death, the county jail defendants moved for summary judgment on the basis of immunity.  The Dunlaps' attorney failed to timely respond, and instead filed three motions requesting scheduling relief and additional time to conduct discovery.  The district court denied all three of plaintiff's motions for procedural relief and granted summary judgment in favor of the county defendants.  On appeal, Pearl Dunlap, Jesse's mother and now the substituted plaintiff in this case, contends that the district court abused

its discretion by denying the three motions for procedural relief. However, the record reveals that Mr. Dunlap and his attorney had ample time to conduct the necessary discovery while Mr. Dunlap was alive, and counsel's conduct after Mr. Dunlap's death reflects a belief that he could prosecute the action consistent with the original schedule. The district court reasonably determined that procedural relief was not warranted after considering all relevant factors, and the grant of summary judgment was proper.

Mr. Dunlap pleaded guilty to several minor criminal charges and was sentenced to serve thirty days in the Sevier County Jail ("Jail"). He suffered from chronic mental illness, including severe depression and paranoid delusions accompanied by suicidal ideations, for which he was prescribed psychotropic medication. Mr. Dunlap alleged that, under his plea agreement, he was to serve his time in the Jail's medical ward and that the Jail would provide all medication to Mr. Dunlap prescribed by a treating physician. When he reported to the Jail, however, a nurse conducted an evaluation and determined that he was suicidal, and subsequently placed him on suicide watch. He was stripped and placed in an observation cell where his behavior was periodically recorded in a watch log. In one watch log entry, an unknown officer noted that Mr. Dunlap was banging his head against the wall and demanding that he be given his medication. He was reevaluated by a nurse after four days, then was released from observation and placed in the general population. Within hours of his release, Mr. Dunlap fell off the top bunk bed in his cell and was sent to a local hospital for treatment. After twenty-one days of incarceration, he was released from jail without any other incidents or complaints.

On July 5, 2018, Mr. Dunlap brought this suit alleging, among other claims, that Jail staff had neglected serious threats to his mental and physical health during his imprisonment in violation of the Eighth Amendment prohibition on cruel and unusual punishment. U.S. Const. amend. VIII.

Defendants were made up of two separate groups, the "county defendants" and the "Healthcare defendants." The county defendants, who are the appellees here, include Sevier County, Tennessee, and the following individuals named both personally and in their official capacities: Sheriff Ronald Seals, Chief Deputy Larry McMahan, Lieutenant Ian Morlean, Sergeant Kyle Miller, Corporal David Buchanan, Officer Joey Leonard, and Officer Malcolm Brandriff. The Healthcare defendants included QCHC, Inc., the Jail's contractual healthcare provider, two of its nurses, and a number of unidentified QCHC employees.

The district court issued a scheduling order setting the deadline for completion of all discovery by November 13, 2019. The parties completed their initial disclosures pursuant to Rule 26(f) in October 2018. Fed. R. Civ. P. 26(f). Between October 2018 and May 2019, Mr. Dunlap issued eleven summonses and responded to written discovery from the Healthcare defendants, but did not serve any formal discovery requests to any of the defendants during the seven-month period.

On May 24, 2019, Mr. Dunlap died. After "waiting an appropriate period," Mr. Dunlap's attorney, Lance Baker, began working with Mr. Dunlap's relatives to designate an administrator for his estate. Shortly after Mr. Dunlap's death, on May 30, 2019, Baker emailed counsel for the county defendants to pursue settlement negotiations. The process was plagued with scheduling conflicts and communication difficulties, and Baker observed that by August 2, 2019, it "became clear" that the parties could not settle the case. In an email sent on August 2, 2019, Baker informed opposing counsel that if the case were not resolved, he would need to take several depositions. The county defendants' counsel allegedly ignored some of Baker's requests and refused to offer Sheriff Seals or Chief Deputy McMahan up for depositions. In an affidavit, Baker testified that he anticipated the defendants would move for summary judgment on qualified immunity grounds,

and that, based on his experience, parties were generally reluctant to engage in discovery before the court decided the qualified immunity issue. He believed that this was the reason that neither party responded to his informal deposition requests.

On August 20, 2019, Baker filed a suggestion of death pursuant to Rule 25(a) alerting the court to Mr. Dunlap's death. Fed. R. Civ. P. 25(a). The notice stated that once the probate court designated a legal representative for Mr. Dunlap's estate, a motion would be filed to substitute the administrator of the estate as the named plaintiff.

Before an administrator was appointed, however, the county defendants moved for summary judgment on September 16, 2019, on the basis of qualified immunity for the individual defendants and on the basis that the county was not liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). On the day of the deadline to respond, Baker moved to defer ruling on the summary judgment motion pending limited discovery pursuant to Rule 56(d), but did not respond to the merits of the summary judgment motion. Fed. R. Civ. P. 56(d). Baker submitted an affidavit stating that he had been working to appoint Mr. Dunlap's mother, Pearl Dunlap, as the administrator of his estate. Baker noted that the parties had conducted little discovery because of "settlement discussions" and various communications and scheduling issues in addition to Mr. Dunlap's death. Baker thus requested additional time so that, once she was substituted as the plaintiff, Pearl Dunlap could depose a number of the named defendants. In the alternative, Baker requested an additional 21 days to respond to the summary judgment motion, pointing to his efforts in probate court and another case where he had a pressing statute of limitations deadline. This request fell under Rule 6(b)(1). Fed. R. Civ. P. 6(b)(1).

On October 24, 2019, Baker moved to substitute Pearl Dunlap as the plaintiff, which the magistrate judge granted the following month.

On February 27, 2020, the district court denied the Rule 56(d) motion. The court ruled that plaintiff had not "established good grounds to defer a ruling on the motion" because she had "not presented any plausible specific reasons why she could not have obtained the facts essential to her opposition through the usual means and within the time previously allowed for discovery in this matter." The court observed that Mr. Dunlap and plaintiff did not serve a single discovery request during the lengthy pendency of the litigation and did not seek to compel discovery under the court's guidelines or the procedures described in Rule 37(a). Fed R. Civ. P. 37(a). The court further declined to give plaintiff additional time to file a response to the summary judgment motion.

On March 1, 2020, plaintiff moved to dismiss the case without prejudice pursuant to Rule 41(a)(2). Fed. R. Civ. P. 41(a)(2). The court denied the motion with respect to the county defendants, ruling that dismissal without prejudice would cause them to suffer legal prejudice as they had already undertaken modest efforts to prepare for trial and had filed a dispositive motion in advance of the request for dismissal, and because plaintiffs had been dilatory in their efforts to obtain discovery in the first place. The court did, however, grant the motion to dismiss plaintiff's claims against the Healthcare defendants, observing that the same factors did not weigh as heavily in the Healthcare defendants' favor. The court thereafter granted summary judgment in favor of the county defendants on all claims. Plaintiff timely appealed.

Plaintiff raises five issues on appeal. In the first three, she argues that the district court abused its discretion by denying her Rule 56(d), Rule 6(b)(1), and Rule 41(a)(2) motions. "With good reason, district courts ordinarily enjoy broad discretion in matters of pretrial management, scheduling, and docket control." *Kimble v. Hoso*, 439 F.3d 331, 336 (6th Cir. 2006). Analyzing the relevant factors for each motion, the court reasonably concluded that the requested procedural relief was not warranted, and the denials were a proper exercise of the court's discretion. Next,

plaintiff contends that the court abused its discretion by not staying the litigation as a matter of course once it learned that Mr. Dunlap had died. However, this argument was not raised before the district court and is forfeited on appeal. Lastly, plaintiff challenges the grant of summary judgment in favor of the county defendants, but a review of the record confirms the lack of any genuine dispute of material fact.

## A. Rule 56(d) Motion

First, the district court did not abuse its discretion when it denied plaintiff's motion to defer ruling on the summary judgment motion under Rule 56(d). Rule 56(d) permits the district court to defer consideration of a summary judgment motion, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The Dunlaps had sufficient time and opportunity to collect the information necessary to contest summary judgment, as the case remained pending for fourteen months before the county defendants filed their motion. Mr. Dunlap had at least seven months to engage in formal discovery, and Baker made no serious effort to collect discovery in the four months after Mr. Dunlap's death. Baker similarly made no attempt to stay discovery and preserve plaintiff's ability to conduct discovery in the future. "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment," which requires that the trial court's ruling "was arbitrary, unjustifiable, or clearly unreasonable." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (quoting *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008)). There was no such abuse in this case.

Consideration of the factors our court applies when determining whether relief under Rule 56(d) is warranted shows that the district court made no clear error of judgment. These factors are: "(1) when the appellant learned of the issue that is the subject of the desired discovery; (2)

whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests." *Plott v. Gen. Motors Corp.*, *Packard Elec. Div.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995) (internal citations omitted).

The first *Plott* factor—when plaintiff first learned of the issue—supports the district court's decision. The Dunlaps and Baker knew of the relevant issues as early as September 2018, because the county defendants plainly pleaded qualified immunity and other immunity defenses in their answer to the complaint. Baker even testified that based on his "experience prosecuting civil rights cases, [he] anticipated that one or more of the Defendants would be filing a motion to dismiss or even a motion for summary judgment based, at least in part, on the qualified immunity defense." Mr. Dunlap's sudden death does not affect the analysis of this factor. Plaintiff concedes that Baker had all of the exhibits underlying the summary judgment motion in-hand by January 2019, well before Mr. Dunlap's death. If Mr. Dunlap's testimony was truly necessary to dispute these arguments, then Baker had at least five months to depose him. The Dunlaps and Baker therefore had sufficient notice of the relevant issues.

The weight of the second *Plott* factor—whether the desired discovery would have changed the outcome—is unclear. The district court did not expressly consider this factor. Plaintiff contends that defendants' deposition testimony would reveal facts sufficient to establish liability on the part of the Jail and the corrections officers who interacted with Mr. Dunlap. For the sake of argument, we assume without deciding that this factor weighs in favor of granting plaintiff's motion.

The third *Plott* factor supports the district court's decision, because the length of the discovery period was more than sufficient to obtain the information that plaintiff desired. Even

accepting as true plaintiff's assertion that the discovery period was seven months long, beginning after initial disclosures were completed in October 2018 and ending when Mr. Dunlap died in May 2019, this was more than enough time to engage in formal discovery efforts. In *Jordan v. City of Detroit*, 557 F. App'x 450, 456 (6th Cir. 2014), we held that seven months was a "reasonable time frame" for discovery in a § 1983 action against a municipality. In *Prewitt v. Hamline University*, 764 F. App'x 524, 532-33 (6th Cir. 2019), we deemed a discovery period lasting approximately six months reasonable in a race discrimination suit. Plaintiff's asserted discovery period of seven months falls squarely within the range of timeframes that we have considered reasonable. Moreover, Baker's actions indicate that he believed the discovery period extended beyond Mr. Dunlap's death. Baker sought to obtain discovery from the defendants in August 2019, months after his client's death, sending opposing counsel email requests to schedule depositions. This would suggest that the discovery period lasted at least eleven months, up until the summary judgment motion was filed. In any event, we need not decide the actual timeframe for discovery; plaintiff's proffered period of seven months was itself sufficient for completing discovery in this case, particularly given Baker's contention below that the "limited discovery" he desired would only require a little over two months' time to complete.

The fourth *Plott* factor—whether plaintiffs were dilatory in their discovery efforts—also supports the district court's decision. Baker admitted below that after exchanging initial disclosures, Mr. Dunlap only responded to written discovery from the Healthcare defendants in April 2019. This was the "extent of discovery." Plaintiff offers no good reason why Mr. Dunlap and Baker could not have issued a single discovery request upon the various defendants during the seven- to eleven-month discovery period. Plaintiff argues that the original litigation strategy was to rely solely on Mr. Dunlap's testimony to prove a constitutional violation, and that his death

forced her into seeking depositions from the defendants at such a late stage. This argument is unavailing. Mr. Dunlap's testimony alone likely would not have been enough to demonstrate a constitutional violation. Such a violation requires showing that the defendant perceived and ignored the inmate's objectively serious medical need. *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018). In all likelihood, the officers' testimony would be necessary to determine the extent of their knowledge and whether they relied on a medical professional's assessment of Mr. Dunlap's condition. *McGaw v. Sevier Cty.*, 715 F. App'x 495, 497-98 (6th Cir. 2017). Similarly, if plaintiff intended to prove that Sevier County was liable under § 1983 under the theory that the constitutional violation here occurred because of "a custom of tolerance or acquiescence of federal rights violations," *see Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005), it likely would have needed more than Mr. Dunlap's testimony.

Baker admits that he began his efforts to schedule depositions in August 2019, eleven months after he learned of the immunity defenses in the Amended Answer and ten months after the initial Rule 26(f) disclosures were completed. This was an inexplicably lengthy delay. In *Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472, 480 (6th Cir. 2010), we held that plaintiffs were dilatory in seeking discovery where they "did not conduct discovery for substantial periods of time and then only through very informal and vague emails." The *Dowling* plaintiffs waited until eight months into the discovery period to serve their first informal discovery request. *Id.* at 479-80. Here, the Dunlaps and Baker took essentially no advantage of the discovery period, and the court reasonably concluded that additional time for discovery was not warranted. This factor has substantial weight in our analysis, as the "main inquiry is 'whether the moving party was diligent in pursuing discovery.'" *E.M.A. Nationwide*, 767 F.3d at 623 (quoting *Dowling*, 593 F.3d at 478). The resolution of this factor in favor of the county defendants therefore outweighs the

second factor assumed to favor plaintiff and underscores why the court's decision did not constitute an abuse of discretion.

Finally, the fifth *Plott* factor—defendants' responsiveness to discovery requests—also supports the district court's decision. We analyze this factor in the context of whether the appellee missed any discovery deadlines, failed to turn over critical documents in response to a request for production, or failed to respond to the appellant's initial discovery requests. *See, e.g.*, *Cline v. Dart Transit Co.*, 804 F. App'x 307, 316 (6th Cir. 2020); *Doe v. City of Memphis*, 928 F.3d 481, 495 (6th Cir. 2019). Here, there is nothing in the record to suggest that the county defendants missed any discovery deadlines or were unresponsive to a formal discovery request. The county defendants dispute that they resisted taking any depositions and contend on appeal that Baker's attempts to take depositions were "half-hearted and fleeting." Because Baker's email exchanges with opposing counsel are not in the record, it is impossible to determine the scope or specificity of the discovery requests.

Thus, even if we assume the second *Plott* factor falls in plaintiff's favor, the *Plott* factors support the district court's decision, and the denial of the Rule 56(d) motion was not an abuse of its discretion.

### B. Rule 6(b)(1) Motion

Additionally, it was not an abuse of discretion for the district court to deny Baker's request for additional time to respond to the summary judgment motion. Rule 6(b)(1) provides that a court "may" extend the time for a party to act if the party shows "good cause," but it is not required to grant such a request. Fed. R. Civ. P. 6(b)(1). Baker's request, which was tucked into a single paragraph at the end of the Rule 56(d) motion and did not cite Rule 6(b)(1), was based on his "efforts to get a family member appointed as administrator of Mr. Dunlap's estate and a pressing

statute of limitations deadline." Plaintiff argues that the district court erred by not even considering the motion, pointing to the court's statement that "the plaintiff never sought leave to file a response out of time." Although inaccurate, the court's statement did not constitute an abuse of discretion because the court's order set forth its reasoning for why there was no good cause to delay the proceedings. The court observed that the Dunlaps and Baker had known of the issues underlying the summary judgment motion well in advance of the motion's filing, casting doubt on any claims that they did not have enough time to adequately prepare a response. The court concluded that there was no "good reason" to delay ruling on the issues presented because the "pertinent issues of fact and law" were identifiable from the briefing. This conclusion was not clearly unreasonable, particularly in light of the court's earlier determination that the Dunlaps had failed to engage in any meaningful effort at discovery, leaving only sparse record for the court to review. District courts have "inherent authority to control [their] docket in promoting economies of time and effort for the court, the parties, and the parties' counsel." *Jordan*, 557 F. App'x at 456-57. (internal quotation marks and citation omitted). The court enjoyed broad discretion to modify the case management schedule, and it reasonably exercised that discretion in deciding that there was no good reason to grant plaintiff additional time.

### C. Rule 41(a)(2) Motion

The district court also did not abuse its discretion in denying plaintiff's Rule 41(a)(2) motion to voluntarily dismiss the action without prejudice with respect to the county defendants. Fed. R. Civ. P. 41(a)(2). The court reasonably concluded that dismissal would prejudice the county defendants in light of their modest efforts at trial preparation, the Dunlaps' lack of diligence in pursuing discovery, and the filing of the summary judgment motion. Rule 41(a)(2) provides, in relevant part: "an action may be dismissed at the plaintiff's request only by court order, on terms

that the court considers proper." Fed. R. Civ. P. 41(a)(2). Whether dismissal should be granted "is within the sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citing *Banque de Depots v. Nat'l Bank of Detroit*, 491 F.2d 753, 757 (6th Cir.1974)). These motions should generally be granted unless "defendant would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.* (citation omitted). The factors we consider in this context, as set out in *Grover*, show that the district court did not abuse its discretion. These factors are: "defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id.*

First, in addition to timely serving initial disclosures upon Baker and submitting a final witness list, the county defendants also undertook the effort and expense of moving for summary judgment and responding to plaintiff's various procedural motions. The district court reasonably characterized these efforts at preparing for trial as modest but still tangible. The case was pending for over a year, and the defendants' activities were directed at matters that either advanced discovery or the litigation as a whole. More significantly, the court's decision was grounded in its analysis of the second *Grover* factor, finding that the Dunlaps lacked diligence in prosecuting this action. The court observed that "there is no excuse apparent from the record for the complete failure by plaintiff's counsel to make any detectable effort to obtain the discovery that the plaintiff now says she needs to rebut the defendants' challenges. That lack of diligence contrasts with conduct of the county defendants' counsel, who worked up the case within the original case management timeline established by the Court." The analysis of the Rule 56(d) factors confirms this view. Third, the court reasonably explained that dismissal was not warranted where plaintiff's

only justification was an "obvious desire to restart the litigation and secure by other means the scheduling relief" that was previously denied, which plaintiff does not dispute here. Fourth, the court reasonably concluded that voluntary dismissal would cause the county defendants to suffer plain legal prejudice where they had filed a summary judgment motion months before plaintiff filed her Rule 41(a)(2) motion. Prejudice is especially likely where plaintiff failed to file a timely response to the county defendants' summary judgment motion and it was virtually certain that she would receive an adverse judgment. "At the point when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice." *Grover*, 33 F.3d at 719.

Thus, the court's evaluation of the *Grover* factors was reasonable, and its decision to deny plaintiff's motion was not an abuse of its discretion.

### D. Automatic Stay

Plaintiff argues for the first time on appeal that Mr. Dunlap's death terminated Baker's authority to act, including any authority to compel or stay discovery or modify the scheduling order, and therefore it was an abuse of discretion for the court to not automatically stay the litigation upon learning of Mr. Dunlap's death. Because the argument was not raised below, it is forfeited.

In his two affidavits, Baker never claimed that Mr. Dunlap's death terminated his authority to act or made it impossible to obtain discovery. Rather, Baker stated that a variety of factors got in the way of deposition discovery, including: "settlement discussions, various communications issues among counsel, the unavailability of counsel, Mr. Dunlap's death, and the delay by defense counsel in responding to [Baker's] request to schedule depositions." Baker did not, at any point

in the litigation, claim that Mr. Dunlap's death divested him of authority to act. Plaintiff and Baker also never requested a stay below.

Consequently, because this argument was not properly raised before the district court, it was forfeited. "[A]ppellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance." *Wood v. Milyard*, 566 U.S. 463, 473 (2012). Despite this general rule, we may exercise our discretion to review issues raised for the first time on appeal in exceptional circumstances. Plaintiff argues that this is one of those times. Four factors guide the exercise our of discretion in such matters, though none applies with enough force to merit review of plaintiff's new arguments. They are:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Fifth Third Bank v. Lincoln Fin. Sec. Corp.*, 453 F. App'x 589, 596 (6th Cir. 2011) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)).

These factors do not support consideration of plaintiff's new argument. Although the question of whether Mr. Dunlap's death terminated Baker's authority to act is a question of law, the proper resolution of the issue in this case is not clear beyond doubt. Plaintiff cites Tennessee law and the Restatement of the Law Governing Lawyers for the proposition that a client's death terminates the attorney's authority to act. *Darling Stores v. Fid.-Bankers Tr. Co.*, 156 S.W.2d 419, 422 (Tenn. 1941). However, the Restatement provides that "[i]n extraordinary circumstances, the lawyer may exercise initiative, for example taking an appeal when the time for doing so would expire before a personal representative could be appointed." *Restatement (Third) of the Law Governing Lawyers* § 31 (2000), comment e. Here, the need to conduct discovery and preserve

Mr. Dunlap's claims could potentially qualify as an extraordinary circumstance, thereby permitting Baker to move to compel discovery or stay the case even before Pearl Dunlap was substituted as the plaintiff. If Baker believed that he had the authority to take the "extraordinary step" of filing the Rule 56(d) motion, it is inexplicable why he would not have the authority to request a stay. In any event, plaintiff's entire argument is belied by the fact that Baker did act as though he had the authority to prosecute this action after Mr. Dunlap's death, given his attempts to negotiate a settlement with the county defendants and schedule depositions. It strains credulity to believe that Baker would have authority to ultimately dispose of Mr. Dunlap's claims, but not to request that the court stay the litigation or modify the scheduling order to accommodate the appointment of a substitute plaintiff. Lastly, our decision not to take up this issue would not lead to a miscarriage of justice, as the Dunlaps had more than enough time to engage in formal discovery and to request a stay after Mr. Dunlap's death. As we stated in *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001), "fairness does not require that a plaintiff . . . be afforded a second chance to . . . shore up his case before the court may consider a defendant's motion for summary judgment." Thus we exercise our discretion to decline review of this issue in the first instance.

### E.  Summary Judgment

Finally, plaintiff challenges the district court's grant of summary judgment, claiming it was "based upon a misapprehension of record facts and a misapplication of applicable law." This argument is without merit. Although the county defendants' summary judgment motion was unopposed, the court was required to "review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *E.M.A. Nationwide*, 767 F.3d at 630. The district court did so here.

To show that the county defendants had violated Mr. Dunlap's constitutional rights under the Eighth Amendment, the evidence had to demonstrate that the defendants perceived and ignored his objectively serious medical needs. *See Richmond*, 885 F.3d at 938. Examining the sparse facts in the record, the district court observed that there was no evidence that the county defendants were aware of and ignored any objectively serious medical need. The medical intake form noted that Mr. Dunlap had mental health issues, and after being evaluated by a medical professional, he was placed on suicide watch to address that serious risk to his health and safety. When he fell off of his bunk, he was taken to the hospital for treatment. In this respect, every serious medical need reflected in the record was appropriately handled by the prison officials.

Plaintiff contends that Mr. Dunlap had another objectively serious medical need—the need to receive his psychotropic medication—and the prison officials were deliberately indifferent by denying him that medication. For proof, plaintiff points to a single watch-log entry, written by an unknown officer, stating: "[inmate] is having serious problems, banging head on concrete, screaming he needs his meds, will follow up [with] intake nurse who verified meds to find out if [doctor] approved any." However, this entry does not establish that prison officials perceived and ignored any serious medical needs. In fact, the latter portion of the entry indicates that the prison official who observed Mr. Dunlap's behavior intended to consult the jail nurse to see if Mr. Dunlap had been prescribed any medication. This entry therefore shows that the prison official intended to address Mr. Dunlap's medical needs, not ignore them. Moreover, this entry shows that the prison official was attempting to follow the guidance of a medical professional. It is not "unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care." *Graham*, 358 F.3d at 384 (internal quotation marks and citation omitted). Furthermore, as the district noted, the vast majority of the watch long

entries stated that Mr. Dunlap was having no issues, and the entry plaintiff cites is the only one where there is any suggestion that he had any issues while under observation. Therefore this incident does not raise a genuine dispute of material fact as to whether any of the prison officials were deliberately indifferent toward Mr. Dunlap's medical needs.

Lastly, the district court properly noted that Sevier County could not be held liable because there were no facts in the record showing that any unconstitutional custom, policy, or practice of the county had a role in causing Mr. Dunlap the alleged harm. Consequently, the county was entitled to judgment as a matter of law. *Monell*, 436 U.S. at 691. Thus, there was no genuine dispute of material fact with respect to the county defendants' *Monell* defenses.

For the foregoing reasons, the district court's denial of plaintiff's motions for procedural relief did not constitute an abuse of discretion, and we affirm the grant of summary judgment in favor of the county defendants.